685 So.2d 1148 (1996)
STATE of Louisiana, Appellee
v.
Ricky Ray BARNES, Appellant.
No. 28835-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
*1149 David S. Williams, Shreveport, for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Hugo A. Holland, Jr., Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, Judge.
The defendant, Ricky Ray Barnes, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. A jury found the defendant guilty as charged. Subsequently, the defendant filed a motion for arrest of judgment and a motion for a new trial, both of which the trial court denied. After adjudicating the defendant a fourth felony offender, the trial court sentenced him to serve the mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. Defendant appeals his conviction and sentence. For the reasons assigned below, we affirm.

FACTS
On August 18, 1994, around midnight, Shyjuntay Evans and Demetrious Jackson were cleaning up after having closed the McDonald's on Linwood Avenue, in Shreveport, Louisiana. Jackson opened the back door to take out the trash, and two black men were standing near the door. Each man had a panty hose mask over his face and was carrying a small handgun. One man was wearing a blue jacket and jeans and the other a brown jacket and jeans. The men entered the store, threatened to shoot Evans and Jackson, and ordered them to lie on the floor. One man stayed with Evans and Jackson while the other man went into the office where the manager, Archie Ray Dickson, was counting the money from the registers.
According to Dickson, a man wearing a panty hose mask with the eyes cut out came into the office where he was counting the money, pointed a gun at him, and ordered him to lie on the floor. Dickson could tell from the skin around the eyes that the man was black. After Dickson lay on the floor, the man put the gun to Dickson's head and told Dickson to open the safe. After Dickson opened the safe, he did not observe the robber's actions. Several minutes later, the robber took Dickson to the rear of the store and made him lie on the floor with Evans and Jackson. About five or ten minutes after the robbers left, Dickson called the police and reported the robbery.
The next day, law enforcement officers went to Dickson's home and asked him to verify that items they had recovered were items taken in the robbery. Dickson identified *1150 a green, locked deposit bag with "McDonald's Linwood" written on it and a green Pioneer Bank bag containing McDonald's gift certificates. He also identified photographs of these items at trial. Dickson estimated that the total amount of money taken during the robbery was $1200.00.
Dickson could not identify the robbers and could not give a description of their clothing. However, he did note that the man who entered the office and ordered him to open the safe had on what looked like brown gloves in addition to the pantyhose mask. Dickson was also able to describe the robber's gun as a rusty silver .22.
Officer S.T. Porter of the Shreveport Police Department testified that at approximately 1:40 a.m. on the night of the robbery, he noticed a green, older model Buick Electra traveling on Greenwood Road. Officer Porter first noticed the vehicle because it had dealer license tags secured with screws. The officer testified that the license tag raised his suspicions because, in his experience, dealer tags were normally magnetized and not secured with screws. He also testified that dealer tags are usually seen on newer and cleaner cars and not on older vehicles. As soon as Officer Porter began to follow the vehicle, the Buick slowed to twenty-five miles per hour in a forty or forty-fivemile per hour speed zone. The Buick then switched lanes without signaling. After switching lanes, the vehicle turned onto Mertis Street from Greenwood Road and Officer Porter noticed that the back vent window was broken. The officer testified that in his experience, this observation suggests that the car was stolen because a broken vent window is often the point of entry in a car theft.
Officer Porter notified headquarters that he was going to make a traffic stop and requested backup. The officer then initiated the traffic stop by turning on his emergency lights and siren. The Buick turned onto Jackson Street and continued for a full block before stopping. When the vehicle stopped, the defendant got out of the car and walked toward Officer Porter's car. Officer Porter met the defendant at the front of the police vehicle, and after a brief conversation, the two men proceeded to the defendant's vehicle so that the defendant could search for his proof of ownership.
When he approached the defendant's car, Officer Porter noticed the passenger, John Perkins, was sitting in the car holding a brown vinyl bag in his lap. When Officer Porter asked Perkins if any guns were in the bag, Perkins said no and voluntarily gave the bag to the officer. When Perkins moved to give the officer the bag, Officer Porter noticed a handgun laying at Perkins' feet. The officer asked Perkins to get out of the car. As Officer Porter reached to retrieve the gun, he saw another gun on the floorboard and he seized both guns. Officer Porter testified that the first gun seized was a blue.38 special revolver, and the second gun was a silver .22 that was not in good condition. On the floorboard of the driver's side of the vehicle, Officer Porter also noticed a blue bandana, a leg of pantyhose, and a pair of sunglasses. The officer did not attempt to seize the other items at that time. Meanwhile, during Officer Porter's conversation with the defendant and Perkins, Officer Kevin Perry of the Shreveport Police Department arrived to give backup assistance. Officer Porter gave the guns to Officer Perry to run a check to determine if they were stolen. While waiting for the information on the guns, Officer Porter looked inside the brown bag Perkins had given him and discovered a Pioneer Bank bag with McDonald's gift certificates inside. The officer testified that this discovery alerted him that there may have been a robbery at a McDonald's.
After running the check on the guns, the officers discovered that Perkins was wanted for a parole violation and that the gun found near him was stolen. Perkins was placed under arrest. Officer Porter then contacted headquarters to see if an armed robbery had been reported that evening. The dispatcher responded that officers were working an armed robbery at the McDonald's on Linwood Avenue. Officer Porter radioed Officer Thomas Morgan who was working the armed robbery to obtain a description of the robbery suspects. Officer Morgan gave him the following description: two black males, one about six feet tall, one five feet, eight inches *1151 tall, both slender; one wearing a brown jacket and one wearing a blue jacket and pantyhose stocking. Officer Morgan also advised that one of the guns used in the robbery was a rusted silver .22. Upon receiving the information from Officer Morgan, Officer Porter searched the car and found a blue sweatshirt jacket and a dirty gray sweatshirt jacket that appeared brownish in color. He also seized the bandana, pantyhose, and sunglasses he had seen earlier. The officer then advised the defendant of his Miranda rights and that the officers were now investigating an armed robbery. He questioned the defendant who stated that he had control over the car the entire evening, and that he did not know how the items the officers found came to be in the car.
Officer Porter had the defendant's vehicle impounded for traffic violations, i.e., no driver's license, no registration, and no insurance. During an inventory search of the car, the officers found a green canvas, locked bank bag under the driver's seat. This bag had "McDonald's, Linwood" written on it. Officer Porter arrested the defendant as a suspect to the armed robbery. Perkins had $251.00 in cash and several rolls of coins on his person. No money was found on the defendant.
The defendant gave a recorded statement to Detective Robert Rambin of the Shreveport Police Department and denied any involvement in the armed robbery. The defendant stated that he had been at the Palomar Motel that evening with a girlfriend, Marika Vance and others. He stated that Perkins offered him $10.00 for a ride home and he agreed to take Perkins home. The defendant first said that Perkins only had a shirt in his hand when he approached the defendant to ask for a ride, but later in the statement, the defendant said that Perkins had a sack of beer with him. He continued to maintain that he did not know how the items found in his car came to be there.
At the trial, Detective Rambin testified that Marika Vance did not corroborate the defendant's story. Deputy John Norsworthy of the Caddo Parish Sheriff's Department, also a security guard at the Caddo Detention Center, testified that the defendant contacted him about setting up a meeting with Perkins while the defendant and Perkins were both incarcerated at the detention center. Deputy Norsworthy set up the meeting and witnessed it. The defendant asked Perkins to sign an affidavit stating that the defendant was not involved in the armed robbery, which Perkins refused to do. After Perkins left the meeting, the defendant told Deputy Norsworthy that he had worked at the McDonald's on Linwood, that he knew what time the safe would be open, how to get into the restaurant, and approximately how long it would take to get in and out of the restaurant. The defendant went on to imply that he was one of the robbers.
At trial, the defendant took the stand and maintained his story that he was at the Palomar Hotel with friends when Perkins asked him for a ride home. He denied any involvement in the armed robbery or knowledge of how the items got into his car. A jury voted 10-2 to convict the defendant as charged. Prior to sentencing, the defendant filed a pro-se motion for a new trial and a motion in arrest of judgment. In these motions, he alleged insufficient evidence, conflicting testimony, erroneous jury instruction, and ineffective assistance of counsel. The trial court denied both motions.
After adjudicating the defendant a fourth felony offender, the trial court sentenced him to life imprisonment without the benefit of parole, probation, or suspension of sentence. The defendant filed a motion to reconsider sentence which the trial court denied with written reasons. The defendant appeals his conviction and sentence.

DISCUSSION
Assignment of Error No. 1:
(Sufficiency of the Evidence)
Although the issue of the sufficiency of the evidence was not properly raised in the trial court by a motion for a post-verdict judgment of acquittal, defendant raised the issue in his motion in arrest of judgment and in his motion for new trial. Thus, we will address the issue on appeal. See State v. *1152 Babin, 93-1361 (La.App. 1st Cir. 5/20/94), 637 So.2d 814, writ denied, 94-1463 (La.10/28/94), 644 So.2d 649.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard for appellate review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. LSA-C.Cr.P. Art. 821; State v. Martin, 26,501 (La.App.2d Cir. 12/7/94), 647 So.2d 437.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing the evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Ford, 26,422 (La.App.2d Cir. 9/21/94), 643 So.2d 293.
Additionally, the circumstantial evidence rule, contained in LSA-R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, that rule does not establish a stricter standard of review than the reasonable doubt formula, but, rather, provides a helpful methodology for its implementation in cases hinging on the evaluation of circumstantial evidence. State v. Brown, 556 So.2d 248 (La.App. 2d Cir.1990).
This court's authority to review questions of fact does not extend to credibility determinations made by the trier of fact. LSA-Const. Art. V, § 5(C); State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Thompson, 27,543 (La.App.2d Cir. 12/6/95), 665 So.2d 686.
In order to obtain a conviction for armed robbery, the prosecution must prove beyond a reasonable doubt the defendant took something of value from the victim's control by the use of force or intimidation while armed with a dangerous weapon. LSA-R.S. 14:64.
The defendant argues that the circumstantial evidence does not exclude the reasonable hypothesis that the defendant was giving Perkins a ride home at the time of his arrest. However, the jury chose not to believe the defendant's testimony concerning his alibi. The defendant did not introduce any evidence to support his alibi and Officer Rambin testified that when he questioned the defendant's alleged alibi witness, she did not corroborate his story. Furthermore, the defendant's testimony did not explain how the items connected to the armed robbery came to be in his car without his knowledge.
The defendant also asserts that the fact that no money was found on his person indicates that he was not a party to the robbery. However, the locked bank bag was found under the driver's seat of the defendant's car. The defendant was driving the car immediately prior to the arrest and stated that only he had control over the car during the entire evening of the robbery. The defendant further argues that the clothing found in the car did not match the description given by the victims. Shyjuntay Evans testified that the robbers wore blue and brown jackets. Officer Porter testified that he found a blue jacket-type sweatshirt and a dirty gray jacket-type sweatshirt that appeared to be brown in the backseat of the defendant's car. The jackets were introduced into evidence and the jury was able to evaluate them and determine if they matched the description given by Evans.
The direct evidence proved that two black men robbed an employee of the McDonald's on Linwood. The state also proved through direct evidence that the defendant was found about two hours after the robbery with the gun used during the robbery, the clothes and masks described by the witnesses, two bank bags identified with the McDonald's store robbed, and McDonald's gift certificates.
*1153 Furthermore, Deputy Norsworthy testified that the defendant told him that he knew the operations of the McDonald's and when the safe would be opened. The state also introduced evidence that the defendant had in fact previously worked at this particular McDonald's and therefore, had knowledge of when the safe would be opened.
Viewing the entirety of the evidence in the light most favorable to the prosecution, the jury could have reasonably inferred from these circumstances that the defendant was involved in the armed robbery. This assignment of error is without merit.
Assignment of Error No. 3[1]
(Excessive Sentence)
The defendant contends the trial court's sentence of life imprisonment is grossly out of proportion to the seriousness of the offense. This argument lacks merit.
The trial court adjudicated the defendant a fourth felony habitual offender based on the following prior offenses: (1) simple burglary on October 30, 1987; (2) unauthorized use of a moveable on October 26, 1990; and (3) two counts of possession of contraband in a state facility on April 25, 1991. In addition, the trial court noted that the defendant had a total of six felony convictions (including one as a juvenile), seven misdemeanor convictions, and seven or more arrests which were dismissed by the district attorney.
Pursuant to the Habitual Offender Law, if the present or a previous conviction is defined as a crime of violence, a fourth felony offender shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence. LSA-R.S. 15:529.1(A)(1)(c)(ii). Armed robbery is defined as a crime of violence. LSA-R.S. 14:2(13). Thus, for this defendant, a sentence of life imprisonment is mandatory. However, a sentence within statutorily authorized limits can be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Freelon, 26,938 (La.App.2d Cir. 5/10/95), 655 So.2d 687.
A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is considered grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). This court will not set aside a sentence as excessive absent a showing of manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App.2d Cir. 1988); State v. Thompson, 25,583 (La.App.2d Cir. 1/19/94), 631 So.2d 555.
As required by LSA-C.Cr.P. Art. 894.1, the trial court stated for the record extensive reasons for the imposition of this sentence even though it was a mandatory sentence. As an aggravating factor, the court noted that the defendant created a risk of death or great bodily injury to more than one person during the commission of the armed robbery. Several other aggravating factors not mentioned by the trial court are also present in this case. The trial court also considered the defendant's criminal history which included a total of six felony and seven misdemeanor convictions, and considered records showing that defendant had been disciplined extensively during his incarceration at the Caddo Correctional Center while awaiting trial. The disciplinary records indicate that the defendant made many threats to the deputies and their families and received several citations for possession of contraband, including handmade knives.
The trial court concluded that the defendant was an extremely dangerous man and a threat to the safety of the community. Based on the defendant's extensive criminal history, the violent nature of the present offense, and defendant's behavior while incarcerated for this offense, we cannot say that the sentence imposed shocks our sense *1154 of justice. Thus, the sentence is not constitutionally excessive. We do not find an abuse of discretion here.
Supplemental Assignment of Error No. 1
(Admission of defendant's recorded statement)
The defendant contends the trial court erred in overruling his objection to the admission of his highly prejudicial, non-probative statements made in a recorded statement given subsequent to his arrest. The defendant argued that the tape was not relevant, since he denied any involvement in the armed robbery, and that the statement was highly prejudicial due to the defendant's cursing and threatening the officers. The state argued that the statement was relevant because in the statement, the defendant claims he had an alibi for the time of the robbery, admits he had control over the car the entire night, and states that he is capable of committing this sort of crime. The trial court ruled that the probative value of the statement outweighed any prejudice and was thus admissible.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. LSA-C.E. Art. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. LSA-C.E. Art. 403. The trial court's determination regarding the relevancy of evidence is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. Burrell, 561 So.2d 692 (La.1991), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991).
Although not a confession, the statement by the defendant was prejudicial. During the statement, the defendant cursed extensively, threatened the life of officers, and threatened to "spray" the McDonald's that was robbed. He stated that if he had done an armed robbery, he would have killed all the employees.
However, we do not find the trial's court conclusion that the probative value of the statement outweighed its prejudicial nature erroneous. The statement is probative for the fact that the defendant claimed an alibi but his alibi witness did not corroborate his statement. Additionally, the statement is probative to show the inconsistent nature of the defendant's denial of participation in the robbery and his lack of explanation for how the items found in his car came to be there. The state also used the statement to show that the defendant had some knowledge of how the crime occurred. Further, in the statement, the defendant mentioned that he did not wear "no pantyhose, no bandana, no gloves, no nothing." However, the interviewing officers had not mentioned that the suspects wore gloves during the robbery. In light of the evidence revealed by the statement, we cannot say that the trial court erred in ruling that the statement's probative value outweighed its prejudicial nature.
On appeal, the defendant argues that the court should have excluded at least the portions of the statement which were prejudicial. The defendant did not request that portions of the taped statement be excluded at trial. A new basis for an objection cannot be raised for the first time on appeal. LSA-C.Cr.P. Art. 841; State v. Cressy, 440 So.2d 141 (La.1983); State v. Smith, 26,661 (La. App.2d Cir. 3/1/95), 651 So.2d 890, writ denied, 95-0918 (La.9/15/95), 660 So.2d 458. Further, under LSA-R.S. 15:450, every "confession, admission, or declaration sought to be used against anyone must be used in its entirety ..." This assignment of error lacks merit.
Supplemental Assignment of Error No. 2
(Admission of other crimes evidence)
By this assignment, the defendant contends the trial court erred by overruling his objections to the state's references to other crimes evidence. He complains specifically of two instances in which the prosecutor elicited answers from witnesses that indicated defendant was a gang member. In the first instance, the prosecutor asked Detective Rambin what the detective thought the defendant was referring to in his statement when defendant mentioned his "rag" and *1155 when he spoke of having the McDonald's "sprayed." The defendant objected on the grounds that the line of questioning was prejudicial. The trial court overruled the objection and the following exchange between detective Rambin and the prosecutor took place:
A. The rag being the blue bandana that he says was his and he makes reference to his former gang membership, he used to be a gang member. Whenever he says "the rag" and he could have done it, that would be his fellow gang members.
Q. What does spraying mean?
A. It means you could shoot it, shoot it up. Spray, spray it with bullets.
Generally, evidence of other crimes or acts of misconduct are not admissible. State v. Jackson, 625 So.2d 146 (La.1993). However, evidence of other crimes, wrongs, or acts may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. LSA-C.E. Art. 404(B)(1).
In order to introduce evidence of other crimes or acts, the prosecution must provide the defendant with notice of its intent to use this evidence and the state is required to prove these acts by clear and convincing evidence. State v. Prieur, 277 So.2d 126 (La.1973); LSA-C.E. Art. 404(B)(1). The prosecution in the present case did not provide such notice. However, the defendant has not argued lack of notice as an error. The defendant argues that the reference to the defendant's gang membership elicited by the state does not fall within any of the exceptions in Article 404(B)(1).
We note that the defendant's argument that the reference to his gang membership is improper other crimes evidence is not properly before the court. As argued by the state, the defendant did not object to the questioning on the grounds that it was evidence of other crimes at trial. As stated above, a new basis for an objection cannot be raised on appeal. LSA-C.Cr.P. Art. 841; State v. Cressy, supra; State v. Smith, supra.
However, this testimony is prejudicial evidence as trial counsel argued. In today's society, members of gangs are not regarded as model citizens. There is an inherent connotation that a gang member is involved in criminal activity. The fact that the defendant was a gang member could have, and probably did, create an image of a bad person in the eyes of the jury. While a defendant's gang membership may be probative under certain conditions, whether this defendant was a member of a gang was not relevant to any of the essential elements of this armed robbery. See U.S. v. Lewis, 910 F.2d 1367, 1372 (7th Cir.1990), and examples cited therein. Thus, it was error for the trial court to allow the testimony.
However, this error is subject to the harmless error analysis, i.e. whether the verdict actually rendered was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94; reconsideration denied, (La. 4/8/96), 671 So.2d 332. Although the trial court erred in allowing the testimony about the defendant's gang membership since it was prejudicial and irrelevant to the essential elements of the offense, we find that the guilty verdict rendered in this trial was not attributable to the error and was thus harmless error.
The state presented direct evidence that placed the defendant in possession of items identified as taken in the robbery, items of clothing and a gun described by a witness, and a pantyhose mask similar to the one used in the robbery. Considering this evidence combined with the defendant's uncorroborated alibi and his inability to explain how the items came to be in the car over which only he had control, the testimony that the defendant was a gang member did not contribute to his guilty verdict.
The defendant also complains of improper questioning which occurred while defendant was being cross-examined by the state. During the trial, the following exchange took place:

*1156 Q. What is that tattoo on your face, by the way?
A. Teardrop.
Q. And that stands for what exactly?
A. My little brother.
Q. Your little brother?
A. Right
Q. Tell me about that.
A. He got killed in 1990.
Q. Crip, right?
A. No, he wasn't.
Q. This was not a gang thing?
A. No, he wasn't.
Q. Isn't it true that the particular teardrop, if you're a member of a gang, which you have already told us you are, at least in your statement to detective Rambin indicates that you have had some involvement with something like that?
A. No, I didn't.
The defendant did not object to this line of questioning at trial. An irregularity or error cannot be availed of after the verdict unless it was objected to at the time of its occurrence. LSA-C.Cr.P. Art. 841. Thus, defendant's argument that this second exchange constituted inadmissible other crimes evidence is not properly before the court.
We have reviewed the record for error patent pursuant to LSA-C.Cr.P. Art. 920(2) and have noted none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that defendant, in brief, specifically abandoned his second assignment of error pertaining to the denial of his motion to suppress.