749 So.2d 817 (1999)
STATE of Louisiana, Appellee,
v.
Michael BIRKLETT, Appellant.
No. 32,261-KA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 1999.
Rehearing Denied January 20, 2000.
*818 Rollin W. Cole, Jr., Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, B. Woodrow Nesbitt, Jr., Assistant District Attorney, Counsel for Appellee.
Before BROWN, PEATROSS & DREW, JJ.
PEATROSS, J.
On May 26, 1998, Defendant, Michael Birklett, was convicted by a jury (on a ten-two vote) of two counts of second degree murder in violation of La. R.S. 14:30.1. Defendant was sentenced to two concurrent life sentences at hard labor. Defendant now appeals his conviction, urging the following three errors: (1) the trial court erred in entering a ruling on Defendant's Motion to Suppress when Defendant was, in practical terms, unrepresented by counsel, without first granting Defendant's new attorney an opportunity to present an argument on behalf of Defendant concerning *819 the necessity of taking further evidence to complete the record of the hearing on the motion, and where Defendant had alleged ineffective assistance of counsel in a pro se motion for the appointment of new counsel; (2) the trial court erred in not reopening the hearing on Defendant's Motion to Suppress for the taking of additional testimony concerning Defendant's request for an attorney prior to and during questioning by Houston police detectives and the voluntariness of his confession, and in allowing the introduction of Defendant's statement at the trial; and (3) the trial court erred in failing to grant Defendant's motion for mistrial after the prosecutor displayed to the jury an enlarged copy of a report from Defendant's expert which contained mention of other crimes allegedly committed by Defendant and, in a sarcastic manner, implied to the jury that Defendant and his expert were trying to hide something from the jury. For the reasons stated herein, Defendant's convictions are affirmed.

FACTS
On September 28, 1991, a drug-related robbery and shooting took place in the parking lot of the Caddo Career Center in Shreveport. A telephone call from a nearby resident alerted the police to the shooting; and, on arriving at the scene, police officers found a small blue Mercury vehicle, engine running, with both occupants dead from multiple gunshot wounds. The victims were later identified as Latson Williams and Ken Loston, who, the police later learned, were supposed to meet Defendant and his friends to sell them cocaine. The investigation led the police to Professional Automotive on Linwood Avenue in Shreveport. Information gathered from interviews directed the police to four men from Houston. The suspects were identified as Donnie Gillyard, Wesley Thomas, Gary Stacey and "Mikey." Gillyard, Thomas and Stacey were arrested in Houston on October 1, 1991. "Mikey" was identified as Defendant, who also lived in Houston, and an arrest warrant was issued. On November 11, 1991, a Caddo Parish grand jury issued a secret indictment wherein Defendant was charged with two counts of first degree murder for the deaths of Williams and Loston. Defendant, however, was not located and arrested until January 14, 1993. On June 7, 1994, Defendant was returned to Shreveport to face the charges in the 1991 indictment. On June 7, 1996, Defendant pled not guilty to an amended bill of information charging two counts of second degree murder. As previously stated, Defendant was convicted on both counts by a jury on May 26, 1998. This appeal followed.

DISCUSSION
Assignment of error numbers land 2: Denial of motion to suppress, ineffective assistance of counsel and failure to re-open hearing on the motion to suppress
Defendant's argument centers around a statement which he gave to Houston police officers following his arrest.[1] Defendant was read his Miranda rights before the interview and he acknowledged by his initials that he had been read his rights and understood them. Sergeant D.A. Ferguson conducted a preliminary questioning of Defendant, but did not record the interview. With Defendant viewing the computer as he typed, Sgt. Ferguson typed Defendant's statement, printed the statement and then asked Defendant to review it for errors and sign it. Defendant was also asked to read the statutory warnings and waiver aloud, as well as a few lines of the statement, all of which he did without any apparent difficulty.
*820 On July 28, 1995, Defendant filed a motion to suppress his statement. An evidentiary hearing was held on that motion on July 31, 1995. At the hearing, the State presented the testimony of two Houston police detectives who were present during the interrogation. The trial judge continued the hearing to August 22, 1995, in order to allow Defendant to present evidence in support of his motion. A subsequent hearing was never held, however; and, on November 22, 1996, after more than a year having passed with no action on the motion by Defendant, the trial judge denied the motion.
On February 19, 1997, Rollin Cole was appointed to represent Defendant. On July 9, 1997, Mr. Cole filed a motion to reconsider the ruling on the motion to suppress, which was denied. Subsequently, on February 18, 1998, Mr. Cole, with leave of court, filed a motion to re-open the hearing, alleging the additional ground that Defendant had requested a lawyer at the time of the statement. Again, the motion was denied and the statement was ultimately introduced at trial.
Defendant's statement was an integral part of the State's case against him. Defendant claims that, had he been given the opportunity to present evidence on the motion, the statement would have been suppressed and the result of the trial would have been different. It is Defendant's position that, because of the inconsistency in his pre-trial representation, the initial hearing was never completed.
Before his present counsel, Defendant had five different attorneys appointed to represent him. The following chronology illustrates the pre-trial events and representation:
June 20, 1994 Randy Collins was appointed as Defendant's
 attorney.
July 31, 1995 Hearing on Motion to Suppress.
 State presents its evidence and the
 trial judge holds the record open
 for defense evidence.
October 16, 1995 Joe Clark appointed; Mr. Collins
 relieved.
December 12, 1995 Pro se motion to dismiss Mr. Collins.
 Defendant apparently was unaware
 that Mr. Clark was appointed
 to represent him.
January, 1,
February 26
and May 22, 1996 State wrote letters to Mr. Clark
 seeking to obtain a date for the
 final suppression hearing. According
 to the State, there was no response.
May 29, 1996 State filed a motion seeking to have
 the court issue a ruling on the admissibility
 of the statement.
May 31, 1996 Mr. Clark failed to appear to complete
 the suppression hearing.
June 7, 1996 Mr. Clark appeared in court to
 plead Defendant not guilty on an
 amended bill of information filed
 charging second degree murder.
September 16, 1996 Mr. Clark relieved; Larry Johnson
 appointed.
September 17, 1996 Pro se motion to appoint new counsel.
September 20, 1996 Mr. Johnson relieved.
October 23, 1996 Steve Glassell appointed.
November 12, 1996 Trial judge issued ruling denying
 Defendant's motion to suppress
 (filed November 22).
November 13, 1996 Mr. Glassel relieved; Richard Goorley
 appointed.
February 19, 1997 Mr. Goorley relieved; Rollin Cole
 appointed.
July 9, 1997 Motion to reconsider ruling on motion
 to suppress filed by Defendant.
February 18, 1998 Amended and supplemental ground
 for re-opening motion to suppress
 filed by Defendant.
May 19, 1998 Trial commenced.
The record reveals that the various changes of appointed counsel were due, in most cases, to conflicts. We also note that, during a significant period of time pre-trial, Defendant was trying to secure private counsel from Texas. While the record is not clear on the specifics of this endeavor, there is some indication that the lack of activity on his case was due to his unsuccessful attempts to get an attorney from Texas to handle his case. Nonetheless, we would be remiss if we did not acknowledge the poor handling of Defendant's case by several of his appointed attorneys. Prior to present counsel, none *821 of the attorneys appointed to represent Defendant took any affirmative action to advance the motion to suppress. It is well-supported by the record that Defendant's second counsel did not communicate with him, other than a brief visit to introduce himself, during more than ten months of representation and that he failed to respond to three requests by the State to provide dates for a hearing on the motion. On the whole, it is readily apparent that very little was accomplished on Defendant's behalf during the two years prior to his present counsel's appointment. In order to determine, however, whether the ineffectiveness of Defendant's pre-trial counsel is reversible error, we must examine the effect which the alleged ineffectiveness had on the outcome of Defendant's case; and, on this record, we find no reversible error.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, a defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
Second, a defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
While we find that Defendant was denied effective pre-trial counsel, prior to the appointment of his present counsel, we cannot say that such denial prejudiced his defense so as to warrant reversal of his convictions. In order to make such a finding, we believe it necessary to examine the various motions filed by Defendant and the bases for suppression asserted therein. In his motion to reconsider the court's ruling on the motion to suppress and for the taking of further evidence in support of the motion, Defendant urged that there was "a strong probability" that the statement was not a verbatim account of what Defendant said and, therefore, was contaminated and unreliable. Additionally, Defendant claimed that his limited ability to read and comprehend the statement at the time it was given supported a finding of inadmissibility. At the hearing on the motion to reconsider, however, his present counsel agreed that such issues were directed more toward the weight to be afforded the statement by the trier of fact rather than its admissibility. On those grounds, therefore, the motion to reconsider the ruling on the motion to suppress was properly denied.
On his present counsel's request, the trial court allowed Defendant to file an additional ground to re-open the hearing on the motion to suppress. Seven months later, Defendant filed an amended and *822 supplemental ground for re-opening the hearing wherein he asserted, for the first time, that, "Defendant has advised his present counsel that he requested a lawyer prior to giving a statement." On this ground, Defendant argued that the statement was involuntary and, thus, inadmissible. We find no merit to Defendant's argument.
Since we find that all of the evidence which would have been adduced at the initial hearing on the motion to suppress, or at the re-hearing had it been granted by the trial court, was adequately presented at the trial, we do not find that Defendant's case was prejudiced by the failure to conduct such hearings prior to trial. This is not to say that all motions to suppress may be adequately addressed during the trial on the merits; however, in this particular case, every issue raised in Defendant's motions were squarely before the court at the trial. Although we agree that such is not a question of admissibility, but of weight of evidence, we note that Defendant's expert, Dr. Vigen, testified at length regarding Defendant's alleged reading deficiencies. Furthermore, the statement and the circumstances surrounding its transcription were covered in depth during the trial by both the State and the defense. Specifically, Defendant testified on his own behalf and did not state, at any time, that he requested a lawyer during his questioning by Sgt. Ferguson. We cannot say that the failure of Defendant's pre-trial counsel to pursue the motion to suppress before trial and Defendant's resulting inability to present evidence on the motion prejudiced his defense to the level warranting a reversal of his convictions. In other words, we cannot say that, but for Defendant's pre-trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. Lockhart, supra; Strickland, supra. We further find that any error on the part of the trial judge in refusing to re-open the hearing on the motion to suppress was harmless and does not warrant reversal of Defendant's convictions.
Assignment of error number 3: Admission of other crimes evidence and failure to grant mistrial
Defendant claims that the trial court erred in failing to grant a mistrial after the State intentionally introduced other crimes evidence. During the cross-examination of Dr. Vigen, the State asked or stated to Dr. Vigen the following:
Now I don't recall that you told the jury this part when you were reviewing your report with Mr. Cole, he remained in a Houston jail for four and a half months and then he spent one year in jail in Beaumont for a robbery and kidnaping charge, which was eventually dropped ... why is it you did not want to tell the jury that statement, I'm not saying it has any significance or anything having to do with his guilt. Why were you hiding from the jury, you and Mr. Cole, the statement that Mr. Birklett spent time in Texas involving robbery, kidnaping charges apparently out of Beaumont that got dropped, this delaying his return to the fine and great state of Louisiana, so that this prosecution could commence? Was there a reason for that?
Defense counsel objected and requested argument outside the presence of the jury. Defense counsel asked for a mistrial and argued that the prosecution had wrongfully painted Defendant as a "bad man" throughout the course of the trial and that the intentional interjection of his incarceration in Texas was in furtherance of that theme. Also at that time, an objection was made concerning the enlarged copy of the Vigen report on display to the jury which contained the other crimes evidence. Furthermore, defense counsel noted that he had not been given any notice by the State that it intended to introduce other crimes evidence. The State countered that the evidence of other crimes committed by Defendant was within the expert's report, which was the subject of direct examination, and, thus, was "fair game." The report, *823 however, had not been marked or offered as an exhibit by the defense. The trial court ordered that the un-redacted, enlarged report could no longer be displayed to the jury and that the assistant district attorney could not continue with his question that included the reference to Defendant's incarceration, but that a mistrial was not warranted. The trial court suggested to counsel that the jury be admonished, but then ruled that it was not necessary.
In support of this assigned error, Defendant relies on La.C.Cr.P. art. 770, La. C.E. art. 404 B, and La. C.E. art. 612 C.[2] We agree with the State, however, that La. C.E. art. 703 and 705 B apply to this evidence.
La. C.E. art. 703 states, in pertinent part:
Bases of opinion testimony by experts:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing.
La. C.E. art. 705 B provides that an expert must state the facts on which his opinion is based and evidence which would normally not be admissible under another evidentiary rule must be shown to form a basis of the opinion testified to by the expert being cross-examined. The reference to "robbery and kidnaping charges" against Defendant would clearly not be admissible pursuant to any stated exception in La. C.E. art. 404 B. We note that the State did not even attempt such an argument to the trial court. Since, therefore, this evidence qualifies as "not otherwise admissible" under La. C.E. art. 705 B, the State was required to make a preliminary showing that this information was part of the factual basis for the witness' opinions. Since the State failed to do so, this evidence was improperly admitted. Further, it appears from the way the objectionable question was blatantly phrased, that the State interjected this inadmissible evidence intentionally.
While we do not condone such behavior on the part of the assistant district attorney, we do not find it to be reversible error. The erroneous introduction of other crimes evidence is subject to harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332; State v. Barnes, 28,835 (La. App.2d Cir.12/11/96), 685 So.2d 1148, writ denied, 97-0274 (La.10/10/97), 703 So.2d 602. The appropriate inquiry is whether the verdict actually rendered was surely unattributable to the error. State v. Wafer, 31,078 (La.App.2d Cir.9/23/98), 719 So.2d 156.
The evidence against Defendant was overwhelming. There was undisputed evidence that placed him at the murder scene and had him pointing a gun at the victims. The crime scene experts testified that the path of the projectiles indicated that they were fired through the driver-side window. This was the location where Defendant admitted to standing. According to Defendant's account of the shooting, no one else was standing by the driver-side window except for him. Defendant's own words put him at the scene and with a weapon pointed at the victims. Any impressions that the other crimes evidence might have given the jury were insignificant compared to the overall evidence. We find that the verdict in this case was "surely unattributable" to the admission of other crimes evidence.
Defendant further argues that he is entitled to a mistrial under La.C.Cr.P. art. 770 because the State mentioned, elicited and commented on other crimes evidence which was in Dr. Vigen's report. The State argues that, because it was in Dr. *824 Vigen's report, it formed some basis for his opinion and was a proper area for cross-examination.
La.C.Cr.P. art. 770 provides:
[u]pon motion by the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury ... the district attorney ... Refers directly or indirectly to: (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible....
Again, we find the above-quoted question or comment made by the assistant district attorney to Dr. Vigen during his cross examination troubling. Although the trial court found that the evidence of other crimes was not admissible, it denied the motion for a mistrial and, as previously stated, was initially going to admonish the jury, but then decided against an admonishment. We agree with Defendant that the denial of the mistrial was improper; however, we find that it does not rise to the level of a prejudicial error. Although La.C.Cr.P. art. 770 is couched in mandatory terms, the supreme court held in State v. Johnson, 664 So.2d 94 (La.1995):
This Court has previously held that violation of [La.C.Cr.P. art. 770] is per se prejudicial and a substantial denial of the defendant's statutory rights, reasoning that the effect on a jury of evidence of inadmissible other crimes evidence cannot be determined. See State v. Brown, 428 So.2d 438 (La.1983). This is so even where a defendant fails to move for a mistrial, as required, as long as an objection is entered. See State v. Duke, 362 So.2d 559 (La.1978); State v. Hamilton, 356 So.2d 1360 (La.1978).
We reject this per se rule as it impacts appellate review. Although Article 770 is couched in mandatory terms, this is a rule for trial procedure. Its operation depends upon motion by the defendant. The defendant may even waive its mandatory mistrial effect by requesting an admonition only. We find instead that the mandatory language of La.C.Cr.P. art. 921 provides the proper scope for appellate review; i.e., a judgment or ruling shall not be reversed due to error unless the error affects substantial rights of the accused.
Once again, the evidence against Defendant was overwhelming. Based on the totality of the facts, the jury could still have found Defendant guilty even if the question had not been asked. This assignment of error lacks merit.

CONCLUSION
For the reasons stated herein, Defendant's convictions are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, CARAWAY, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing Denied.
NOTES
[1] The Houston Police Department was working with the Shreveport Police Department in attempting to secure Defendant's arrest for the murders in Shreveport. There is somewhat of a "drug pipeline" which runs from Houston to Shreveport; and, therefore, it is not uncommon for the two departments to assist each other in drug-related investigations.
[2] Defendant inappropriately relies on a psychologist-patient privilege argument, which would have been waived when the un-redacted report was produced to the State in discovery.