MADELEINE M. LANDRIEU, Judge.
h Robert T. Gray appeals his conviction and sentence for the second degree murder of Robert Thomas. For reasons that follow, we affirm.

STATEMENT OF CASE

The State charged the defendant, Robert T. Gray, with the June 1, 2011 second degree murder of Robert Thomas, a violation of La. R.S. 14:30.1. Gray pled not guilty at a November 2, 2011 arraignment. Prior to trial, the State filed a “Notice of State’s Intent to Introduce Evidence of Defendant’s Motive.” In that notice, the State sought permission to introduce evidence that Robert Thomas’ murder was gang-related, including evidence of Gray’s membership in a gang. Following a Prieur hearing, the trial court granted the motion.[1] On the first day of trial, Gray filed a motion in limine to exclude any mention of his alleged gang affiliation. The trial court denied the motion. A jury found Gray guilty as charged on October 3, 2013. Gray filed a motion for new trial, which was denied; He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence on October 25, 2013. This appeal followed.[2]

^STATEMENT OF FACTS .

On the morning of June 1, 2011, Robert Thomas and Michael Alphonse, both fifteen years of age at the time, were at Alphonse’s house where they smoked marijuana together. They went to Thomas’ house later that morning, and at approximately 2:00 p.m., the two teenagers decided to ride their bicycles to a store less than two miles, away from Thomas’ house. On their way to the store, some people called out to them using their nicknames. One of those calling out to Thomas and Alphonse was the defendant, Gray, who Alphonse knew as “Big Rob.” According to Alphonse, Gray was a member of a gang called “YGG” from the Mid-City area of New Orleans.[3] Thomas and Alphonse did not go over to the group calling out to them because Thomas told Alphonse that the YGG gang was “beefing” with another gang called “STY,” which stood for “St. Thomas Youngens.” Alphonse claimed that Thomas was not a member of STY, but was -concerned about the feud because he grew up in the St. Thomas housing project and knew members of STY.
When Thomas and Alphonse reached the store, Alphonse went inside while Thomas waited outside. Thomas told Alphonse to hurry. As Alphonse entered the store, Terrell Harris walked out. Al *938 phonse recognized Harris as a member of YGG. Alphonse went outside briefly to get money from Thomas, and once again, Thomas emphasized that AJphonse should hurry. When Alphonse was back inside the store, he saw from his peripheral vision that Gray was pointing a gun at Thomas. As Thomas stood inside the open doorway of the store, he saw Gray shoot Thomas several times, Alphonse stated that his view of the shooting was | ^unobstructed. Thomas died at the scene, The murder occurred in the 600 block of South Pierce Street.
Alphonse ran away from the scene immediately after the shooting and looked around and saw that Harris was following him on a bicycle. To escape Harris, Alphonse ran into another store and called 911. In the 911 call, Alphonse denied knowing the identity of the shooter, but explained at trial that he did so to focús the 911 operator on getting an ambulance dispatched to try to save Thomas. When Alphonse returned to the scene, the police were present and Alphonse learned that Thomas was dead. He went to Thomas’ house to inform his family of Thomas’ death, and told them that “Big Rob” (Gray) was the shooter.
According to Alphonse, Gray was using a 9mm gun and was wearing camouflage cargo shorts and a white T-shirt. A photographic lineup that included Gray wearing a similar outfit was shown to Alphonse during the murder investigation, and Alphonse identified Gray in the lineup as the perpetrator of Thomas’ murder. At trial, Alphonse positively identified Gray, someone with whom he was acquainted prior to the murder, as the man who shot and killed Thomas.[4]
Approximately one month before the murder, Alphonse had an altercation with Terrell Harris where Harris pointed a gun at him. Gray was with Harris at the time. Alphonse identified Harris from a photographic lineup during the murder investigation. At trial, Alphonse stated that Harris did not commit the murder of Robert Thomas. Alphonse stated re-, peatedly that Gray was the person who shot and killed Thomas.
Raven Thomas, the sister of the victim, testified that Alphonse arrived at her family's residence and informed them that her brother had been shot and killed. When asked at trial whether Alphonse was able to answer her question as to who had shot her brother, she stated ‘Yes.’’[5] When asked if she knew the defendant, Raven stated that she knew him, that he had the nickname “Big Rob” and that he was a member of the YGG gang. She also stated that Terrell Harris is in the YGG gang.
Detective Maggie Darling of the New Orleans Police Department (“NOPD”) was the lead detective in the investigation of the June 1, 2011 murder of Robert Thomas. Five 9 mm casings were recovered at the crime Scene. Meredith Acosta, a firearms examiner for the NOPD Crime Lab, confirmed that all five casings were fired from the same weapon. The gun that fired the casings was recovered several weeks after the murder when it was found in the possession of Gregory Brumfield when he was arrested for an unrelated crime.
*939 Brumfield, a known close associate of Gray, was arrested with Terrell Harris (who was at the store the day of Thomas’ murder and had chased Alphonse on his bicycle after Thomas was shot.) During the investigation, Alphonse identified Harris through a photographic lineup as the person who chased him after the shooting. Det. Darling subsequently learned‘that an ankle monitoring device being worn by Harris showed that he was near, the .murder scene around the time of the murder. When Det. Darling learned that Brumfield was a close associate of Gray, Land was arrested with Harris, who was also connected to Gray and was on the scene the day of Thomas’ murder, Det. Darling decided to have the gun found in Brumfield’s possession tested. The testing revealed that the gun in Brumfield’s possession was the one used to murder Robert Thomas on June 1, 2011. . .
Michael Alphonse was the only person at the murder scene willing, to cooperate with the police investigation. When Det. Darling interviewed Alphonse with his mother, Alphonse identified the murderer as “Big Rob.” Alphonse did not know the full name of the person he knew as “Big Rob” but remembered that “Big Rob” had suffered a gunshot wound around Easter 2011 in the 3900 block of D’Hemecourt Street. Det. Darling contacted Detective Anthony Bakewell of the NOPD Multi-Agency Gang Unit, who was familiar with both the Easter 2011 shooting and gang activity' in the area where Thomas was murdered. Det. Bakewell identified “Big Rob” as Robert Gray and gave Det. Darling a physical description of Gray that matched the description given by Alphonse and by another person known only as “Asia” who called 911 on the day of the murder. Based on information gathered in her investigation, including the fact that Alphonse positively identified Gray from a photographic lineup as the shooter, Det. Darling obtained a warrant for Gray’s arrest. Gray turned himself in to the police on June 15, 2011.
Det. Bakewell investigated specific gangs in the New Orleans .area, and obtained information regarding gangs from social media, jail phone calls, witnesses to violent crimes and informants willing to cooperate with police. Det. Bakewell testified as follows: The Mid-City Killers is a gang he has investigated. The “YGG” gang — or ‘Young Gangstas Gang” — is part of 'the Mid-City Killers. Det. Bakewell learned from an informant that the defendant, Gray, was a member of YGG and was also known as “Gangstah Rob,” “Fat' Rob” and “Big Rob,”'and Det. Bakewell heard Gray identify himself in a recorded phone call from jail as a member of YGG and the Mid-City Killers. The recordings of certain phone calls Gray had while in jail were played for the jury. Det. Bake-well testified that Gray was on a “Target Offenders List,” which was comprised of people of interest to the police regarding violent crime.
Det. Bakewell testified as-to several postings on Gray’s Facebook page, which noted Gray’s loyalty to the YGG gang, or more specifically.to his “gangstas and killas, YGG2MCK.” On June 1, 2011, the day Robert Thomas was murdered, a posting on Gray’s Facebook page stated, in part: “Every true gangsta been 'taught the game before they played it, so I’m living this gangsta shit up.” On June 9, 2011, several days before Gray turned himself in to the police, the posting on Gray’s Face-book page stated, “Live by the gun, , die by a gangsta.” Det. Bakewell testified as to several other Facebook postings and identified photographs posted on Gray’s Face-book page and other Facebook pages that showed Gray with other YGG members, including Terrell Harris. Det. Bakewell acknowledged that some postings he gath *940 ered from Gray’s Facebook page: were made after Gray was incarcerated, and explained that someone with Gray’s password could post to Gray’s Facebook page.
On the day of the murder, Det. Bakewell arrived át the scene approximately five to ten minutes after Thomas was. shot. He assisted in the investigation of the murder and learned from other investigators that the perpetrator was a heavy-set male named “Rob” who also went by the names “Gangstah Rob” and “Big Rob.” Det. Bakewell informed Det. Darling that the man matching, that description was the defendant, Gray. Det. Bakewell also knew Gray had suffered a gunshot wound Mn a gang-related shooting a couple of months before the murder of Robert Thomas, and that Gray had not cooperated in the investigation of that shooting.

ERRORS PATENT

The record reveals no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR

In his sole assignment of error, Gray argues that the trial court abused its discretion by allowing the introduction of “expert” testimony as to Gray’s alleged gang affiliation. Specifically, Gray argues that the State did not offer sufficient evidence to establish that Det. Bakewell was ah expert in gang activities, and that the prejudicial effect of the gang label substantially outweighed its probative value.

Expert qualification

In his brief, Gray states that he repeatedly objected to Det. Bakewell’s testimony as an expert in gang activities. Ho cites to three objections he made at trial. The first objection concerned the introduction of evidence of Gray’s gang activities,which the trial court allowed following a Prieur hearing. The second objection was a hearsay objection to Det. Bakewell’s testimony about a target offenders list that included Gray and to his testimony that an informant had told him Gray was a member of the Mid-City Killers. Gray’s third objection was to the introduction of copies of postings from Gray’s Facebook page.

Expert testimony

None of the objections cited by Gray addressed Det. Bakewell’s qualifications to testify as an expert, and the record does not include any other objection to Det. Bakewell’s expert qualifications. Because no objection was made regarding Det. Bakewell’s qualifications to testify as an expert, this issue was not Improperly preserved for review. La.C.Cr.P. art. 841.[6] We note, however, that there is no indication in the record that Det. Bakewell was qualified as an expert by the court or provided the court with expert testimony. Det. Bakewell testified as a fact witness.

Other crimes evidence

Generally, Louisiana has a fundamental rule that evidence of a defendant’s, other crimes or bad acts is not admissible to prove the defendant committed the crime being prosecuted because he has committed other such crimes in the past or to *941 show he probably committed the crime being prosecuted because of his criminal character. State v. Garcia, 2009-1578, p. 53 (La.11/16/12), 108 So.3d 1, 38. However, such evidence is admissible if the State proves an independent and relevant reason. Id. This principle -is codified in La. C.E. art. 404(B)(1). Id.
La. C.E. art 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes^ such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal ease shall provide reasonable notice in "advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes,' or when it relates to conduct that constitutes an integral part of the act or transaction that is - the subject of the present proceeding.
|fl(Emphasis added.)
Prior to admitting evidence allowed pursuant to La. C.E. art. 404(B)(1), the State must provide notice to the defendant and afford a hearing at which it must show that the evidence is admissible. State v. Harris, 99-2846, p. 8 (La.App. 4 Cir. 1/24/01), 781 So.2d 73, 80, citing State v. Prieur, 277 So.2d 126 (La.1973), To be admissible, at least one of the purposes allowed by La. C.E. art. 404(B)(1) “must have substantial relevance independent from showing the defendant’s general criminal character in that it tends to prove a material fact genuinely at issue.” Garcia, 2009-1678, p. 54,108 So.3d at 38. The probative value of this evidence must outweigh its prejudicial effect. Id., 2009-1578, p. 54, 108 So.3d at 39. Additionally, the State must show that the defendant committed the other acts. Id. The trial court’s determination of "admissibility of other crimes evidence will not be disturbed absent- an abuse of discretion. Id., 2009-1578, p. 55,108 So.3d at 39.
In its Notice of- State’s Intent to Introduce Evidence of Defendant’s Motive, the State asserted that it intended to introduce evidence of Gray’s gang affiliation in order to show motive, for the murder of Robert Thomas.. The State’s theory of the case was that Thomas was .killed as a result of his and Gray’s, affiliations with different gangs.
Gray cites State v. Barnes, 28,835 (La. App. 2 Cir. 12/11/96), 685 So.2d 1148, as authority for his position that the trial court improperly allowed the evidence of his gang affiliation.' In that case, Barnes committed an armed robbery at a fast food restaurant. At trial, the defendant objected to a question about a blue bandana in reference to gang-activity and the definition of “spray” in reference to shooting. Id., 28,835, pp. 12-13, 685 So.2d at 1154-1155. In rejecting Barnes’ complaint of other crimes evidence on appeal, the Second Circuit found that the | tissue had not been properly preserved for appeal. Id., 28,835, pp. 13-14, 685 So.2d at 1155, citing La.C.Cr.P. art 841. However, the Second Circuit opined that the argument had substantive merit, reasoning:
[T]his testimony is prejudicial evidence as trial counsel argued. In today’s society, members of gangs are not regarded as model citizens. There is an inherent connotation that a gang member is involved in .criminal activity. The fact that the defendant.was a gang member could have, and probably did, create an image of a bad person in the eyes of the jury. While a defendant’s gang membership may be probative under certain conditions, whether this defendant was a member of a gang was.,not relevant to any of the essential elements of this *942 armed robbery. See U.S. v. Lewis, 910 F.2d 1367, 1372 (7th Cir.1990), and examples cited therein. Thus, it was error for the trial court to allow the testimony.
Id., 28,835, p. 14, 685 So.2d at 1155,
Despite finding substantive merit to Barnes’ argument, 'the Second Circuit found that’ the error was substantively harmless. Id.
This case is distinguishable from Barnes in that the State introduced evidence of Gray’s gang affiliation to show motive for the murder. In State v. Brown, 42,054, pp. 12-13 (La.App. 2 Cir. 8/29/07), 965 So.2d 580, 588, the Second Circuit found that evidence of gang affiliation was admissible and relevant “to'Show [Brown’s].motive to specifically injure the intended victim who was affiliated with a rival gang.” In State v. Weatherspoon, 2006-539 (La. App. 5 Cir. 12/12/06), 948 So.2d 215, the Fifth Circuit found that evidence of -the defendant’s gang-related revenge motive was admissible because it was relevant to show specific intent to injure in a case that originally charged the defendant with second degree murder. In State v. Williams, 2002-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, the Fifth Circuit found that evidence of a defendant’s gang affiliation |nwas relevant to show his motive to specifically injure the victims, who were affiliated with a rival gang.[7]
' In the instant case,.- the trial court granted the State’s request to introduce evidence of Gray’s gang affiliation after conducting a Prieur hearing. The Court allowed the State to introduce evidence of Gray’s gang affiliation for the purpose of establishing motive, i.e., that Gray murdered Thomas because of Thomas’ association with a rival- gang, and to establish identity. According to Alphonse’s testimony, when Gray called out to him - and Thomas on the day of the shooting, Thomas told him not to respond because YGG, Gray’s gang, was feuding with the STY gang. Alphonse testified that Thomas was not a member of the STY gang, but was concerned about the feud between the two gangs because he grew up in the St. Thomas housing project and knew members of the STY gang. Gray’s gang affiliation was relevant to show, his motive for shooting Thomas. Additionally, Gray’s association in YGG and his relationship with Brumfield (in whose possession the murder weapon was found) and with Terrell Harris (who was-, on the .scene at the time of the murder) corroborated Alphonse’s identification of Gray as the shooter.
We find that the trial court did not abuse its discretion in allowing this evidence.

CONCLUSION

For the reasons stated above, the defendant’s conviction and sentence are hereby affirmed. ■
AFFIRMED
JENKINS, J., concurs and assigns reasons.

. At the defendant’s request, this Court sent him a copy of the appeal record and granted him time to file a pro se brief, but no pro se brief was filed. The only brief filed on behalf of defendant was the one filed by his appellate counsel.

.Other testimony at trial identified the YGG gang as “Young Gangstas Gang."

. Dr. Karen Ross, a forensic pathologist with the Orleans Parish Coroner’s Office, conducted the autopsy of Robert Thomas and classified his death as a homicide caused by multiple gunshot wounds.

, The trial court instructed Raven Thomas not to state the name of the person who Alphonse identified to her as the person who shot Robert Thomas.

. La.C.Cr.P. art, 841 provides:
A.An’ irregularity or error cannot be availed of after verdict unless it was objected to at. the time of occurrence. A bill of exceptions to rulings or orders is unnecessary, It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the aetlon which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
B. The requirement of an- objection shall not apply to the court’s ruling on any written motion.
C. The necessity for and specificity of evi-dentiary objections are governed by the Louisiana Code of Evidence.

. In a recent opinion in a pre-trial matter, this Court reversed a trial court's denial of a motion in limine seeking introduction of the defendant’s gang affiliation. In State v. Waterhouse, 2014-1048 (La.App. 4 Cir. 6/19/15), 171 So.3d 1113, the State sought to introduce .evidence of the defendant’s gang membership in order to show .that the defendant accidentally shot the victim, a fellow gang member, when the victim moved into his line of fire during a shootout with a rival gang. The intended target, Bryan Deval, was allegedly a member, of the rival gang. This Court found that "evidence of Defendant's gang affiliation may.be relevant to establish Defendant’s identity as well as his motive and intent for shooting at Deval’s car.” Id., 2014-1048, p. 6, 171 So.3d at 1116-1117. This Court further stated, "If the State is able to meet its burden under La. C.E. art. 1104, Prieur, and its progeny, this evidence may be admissible.” Id. The Court remanded the matter for a hearing to allow the State the opportunity to meet its burden under Prieur and La.. C.E. art. 1104.