779 So.2d 4 (2000)
STATE of Louisiana
v.
George MOODY.
No. 2000 KA 0886.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
*6 Honorable Doug Moreau, District Attorney, Baton Rouge, by Aaron Brooks, Asst. District Attorney, Counsel for Plaintiff/Appellee State of Louisiana.
M. Michelle Fournet, Baton Rouge, Counsel for Defendant/Appellant George Moody.
Before CARTER, C.J., WEIMER and CONQUE JJ.[1]
DURWOOD W. CONQUE, J. Pro Tempore.
The defendant, George Lewis Moody, was charged by bill of information with one count of attempted second-degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1, and one count of armed robbery in violation of La. R.S. 14:64. At arraignment, he entered a plea of not guilty to both charges, and later moved unsuccessfully to suppress his written confession. Following a jury trial, he was found guilty of aggravated battery, a responsive verdict to attempted second-degree murder, and armed robbery.
His motion for new trial was denied, and he was sentenced to the maximum ten years at hard labor for aggravated battery. He was also sentenced to thirteen years at hard labor, without benefit of parole, probation, or suspension of sentence for armed robbery, each of the sentences to run concurrently with the other. He moved unsuccessfully for reconsideration of the sentences, and now appeals, designating two assignments of error.
ASSIGNMENTS OF ERROR
(1) The trial court erred in denying the defendant's motion for new trial based on an unreliable identification procedure; and,
(2) The trial court erred in denying the defendant's motion for new trial based on ineffective assistance of counsel.

FACTS
In the early evening of October 3, 1997, James Lee, age seventy-seven, walked, as he did almost every day, to the convenience store located on Nicholson Drive, approximately a block and a half from his home on Aster Street in Baton Rouge, Louisiana. As he made his way back home, he carried a six-pack of beer in his hand, eight twenty-dollar bills in his wallet, *7 and almost six hundred dollars in his right pants pocket, the proceeds from a check he had cashed at the store.
As Lee walked along Wyoming Street, he passed by the home of an individual identified only as "Crazy Daisy's" a colorful, local character Lee had known for over a decade. Sitting on "Crazy Daisy's" porch were her daughter, named Jerry, and a man Lee had often seen there, but had never met. Jerry asked Lee for a can of beer, and he gave her one, noticing that the man, whom he did not know by name, walked off the porch and around the back of the house toward the railroad tracks.
Lee's route home took him around the back of the house as well, and when he got near the tracks, he was confronted by a man with a handkerchief or hood covering his head who demanded that Lee, "give it to him", or "let him have it." Lee responded that he had nothing except the five cans of beer, but that the assailant was welcome to one if he wanted it. The man then stabbed Lee in the abdomen, pushed him to the ground, straddled him, and took his wallet from his back pocket. Before the assailant could find the money in Lee's pants pocket, a passing motorist stopped in response to Lee's screaming, and the attacker fled.
The victim, James Lee, was not able to identify his assailant by name immediately after the attack, nor was he able to give the police a good physical description at that time, which he attributes to his own physical and emotional condition after the stabbing. In addition, the record shows that Lee, perhaps because of age, often had difficulty, even at trial, understanding and communicating his thoughts effectively. At any rate, when he "[came] back to [himself] again", after his release from the hospital, he "recognized" who the assailant "resembled", and concluded that it was the man whom he had seen on Daisy's porch.
Daisy later told him that the man who stabbed him was her daughter's boyfriend, "George Reese," who lived on Maryland Street. There are some inconsistencies in the information that the victim gave the police regarding the name and the identity of his assailant during the investigation, which lasted several months. But, at both the preliminary hearing and at trial, James Lee was able to make a positive in-court identification of the defendant as the man who attacked him.
Baton Rouge City Police Captain Dennis Kelley testified at trial that, approximately forty-five minutes before the attack on James Lee, he had also seen the defendant sitting on Daisy's porch, which was approximately four hundred feet from the site of the attack. Captain Kelley had previously stopped and checked the defendant, when he saw him in the company of one Alvin Weeks, who was Daisy's son and a known armed robber. During the investigation, Captain Kelley learned that a contempt of court warrant had been issued for the defendant, so he directed officers to arrest him on the warrant if he returned to the Maryland Street address. Upon his arrest, he was questioned about the robbery and stabbing, and he confessed to these crimes in writing.

UNRELIABLE IDENTIFICATION
The defendant's first assignment of error is that the trial court erred in denying his motion for new trial on the grounds that the victim's identification was unreliable. Conceding that no motion to suppress the identification was ever raised either before or during the trial, and that no objection was made to the in-court identification at the trial, the defendant claims, nonetheless, that this issue has been preserved for appeal, since it was raised at the hearing on the motion for new trial. We disagree.
Additionally, contrary to the defendant's argument, the fact that the defense made the argument that the victim's identification was unreliable at the hearing on the motion for new trial did not preserve the issue for review. The State presented its identity evidence, as it had to, at trial, not *8 at the hearing on the motion for new trial. Thus, any oral objection to that evidence also had to be made at trial, and any written motion to suppress the identification would have to have been filed no later than the end of trial.[2]
A defendant who fails to file a motion to suppress identification, and who fails to object at trial to the admission of the identification testimony, waives the right to assert the error on appeal.[3] Contrary to the defendant's argument, raising the issue in a motion for new trial does not serve to revive it, nor does it preserve it for appellate review. In any event, the instant assignment of error seeks review of a matter not reviewable on appeal. The denial of a motion for new trial based upon Louisiana Code Criminal Procedure article 851(1) is not subject to review on appeal.[4]

INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant's second assignment of error is that the trial court erred in denying his motion for new trial on the grounds of ineffective assistance of counsel before, and during, trial. He argues that his then defense counsel refused to participate at the hearing on the motion to suppress the confession, and failed to file a motion to suppress the identification. He also claims that she performed deficiently at trial by failing to adequately cross-examine the victim, failing to object to hearsay evidence, and by eliciting testimony from the defendant and his father concerning the defendant's prior arrests. Finally, the defendant urges that, because he was denied effective assistance of counsel, the ends of justice would be best served by the granting of a new trial, even if the court found that the defendant would not be entitled to a new trial as a matter of strict legal right.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy.[5] A motion for new trial on the basis that the ends of justice would be served thereby presents nothing for this Court to review unless a particular argument *9 is made in connection therewith.[6]
A claim of ineffectiveness of counsel is analyzed under the two pronged test developed by the United States Supreme Court.[7] To be successful, the defendant must first show that the attorney's performance was deficient.[8] This requires a showing that counsel made errors so serious that the defendant was effectively denied the right to counsel as guaranteed by the Sixth Amendment. Secondly, the defendant must prove that counsel's deficient performance actually prejudiced the defense, meaning that the errors were so serious that the defendant was deprived of a fair trial. It is not enough for the defendant to show that his counsel's errors or omissions had some conceivable effect on the outcome of the proceeding. Rather, he must show that, but for counsel's errors, a reasonable probability exists that the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the two components.[9]
A thorough review of the record in the instant case reveals that, after defense counsel was held in contempt during her cross-examination of a witness during the motion to suppress confession hearing, she stated, "At this, your Honor, I am none [sic] participating." Thereafter, the hearing was held in abeyance until after she completed her twenty-four hour jail sentence. When the hearing reconvened, defense counsel submitted on the pleadings, and did not question the witness called by the state.
We do not reach the issue of whether or not counsel's performance was deficient at the hearing on the motion to suppress the confession because we find that there is an inadequate showing of prejudice[10]. At the hearing, defense counsel thoroughly cross-examined the police officer who took the defendant's confession. She also filed a competent four-page memorandum in support of the motion to suppress setting forth issues, argument, and legal authorities in support of her position.
With regard to the remaining allegations of ineffective assistance of counsel, we note that an evidentiary hearing would be required to determine whether the alleged deficient performance concerned matters of strategy, and therefore could not possibly be reviewed on appeal.[11] Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial, rest with an accused and his attorney. The fact that a particular strategy *10 is unsuccessful does not establish ineffective assistance of counsel.[12]
Given the existence of a written confession in this matter establishing the defendant's identity as the perpetrator of the offenses, counsel may have decided that a motion to suppress the victim's identification of the defendant would have accomplished little. Further, counsel explained her strategy in eliciting testimony from the defendant's father concerning the defendant's prior arrests (to establish the defendant's father's knowledge of the mindset of his son), and she may have elicited this information from the defendant in an effort to establish his candor before the jury.
A thorough review of the preliminary and trial transcripts reveals a zealous, relentless, and thorough defense presented by counsel on behalf of the defendant. In the face of a written confession and a positive identification of the defendant by the victim, it is no small accomplishment that defense counsel was successful in preventing a verdict of guilty of attempted second-degree murder in this matter, and in convincing the jury that it should return a responsive verdict of aggravated battery instead.
While we cannot condone defense counsel's contemptuous behavior in the trial court, we also cannot say that it deprived the defendant of due process or the right to counsel. We note that defense counsel's contempt citations occurred in a pretrial hearing, not before the jury during trial on the merits, and before a judge different from the judge who presided over the trial.
We find no error in the trial court's denial of the defendant's motions for new trial.
Conviction and Sentence Affirmed.
NOTES
[1] Honorable Durwood W. Conque, 15th Judicial District Court is serving as judge pro tempore by appointment of the Louisiana Supreme Court.
[2] La.Code Crim. P. art. 841(A), La.Code Crim. P. art. 703(C), La.Code Crim. P. art. 521; In his brief to this Court, the defendant relies upon State v. Jones, 94-1098 (La.App. 1st Cir.6/23/95), 658 So.2d 307, writ denied, 95-2280 (La.1/12/96), 666 So.2d 320, for the proposition that this Court has reversed a conviction on an identification issue in the absence of either a motion to suppress or an objection below. (Defense brief, p. 16). Jones is distinguishable from the instant case, however. Therein, the defendant sought review of the sufficiency of the evidence pursuant to a formal assignment of error. In the interest of justice, this Court considers the claim of insufficiency of the evidence briefed pursuant to a formal assignment of error even in the absence of a motion for post-verdict judgment of acquittal under La.Code Crim. P. art. 821. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). In the instant case, the defendant does not challenge the sufficiency of the evidence. Further, in Jones, absent the challenged identification, the evidence against the defendant was insufficient to support the conviction. In the instant case, the defendant's identity as the perpetrator was established not only by the victim's testimony, but also by the defendant's written confession.
[3] See La.Code Crim. P. arts. 703 & 841; State v. Brumfield, 96-2667, pp. 11-12 (La.10/20/98), 737 So.2d 660, 667-68, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999); State v. Walker, 94-0587, p. 7 (La.App. 1st Cir.4/7/95), 654 So.2d 451, 455, writs denied, 95-1124 (La.9/22/95), 660 So.2d 470, 95-1125 (La.9/22/95), 660 So.2d 470.
[4] State v. Hampton, 98-0331, p. 12 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999).
[5] State v. Williams, 632 So.2d 351, 361 (La. App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139.
[6] See State v. King, 563 So.2d 449, 457, n. 1 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
[7] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[8] Williams, 632 So.2d at 361
[9] State v. Serigny, 610 So.2d 857, 859-60 (La. App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
[10] In his brief to this Court, the defendant relies on United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), to argue he need not establish prejudice in support of his ineffective assistance of counsel claim. (Defense brief, p. 19). In Cronic, 466 U.S. at 659-60, 104 S.Ct. at 2047, the court recognized ineffectiveness of counsel could be presumed without a showing of prejudice when either: there was a complete denial of counsel; counsel entirely failed to subject the prosecution's case to meaningful adversarial testing; or the likelihood that any lawyer, even a fully competent one, could provide effective assistance was so small that a presumption of prejudice was appropriate without inquiry into the actual conduct of the trial. A presumption of prejudice is not warranted on the instant record.
[11] See State v. Allen, 94-1941, p. 8 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1271, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433.
[12] State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir.1993).