951 So.2d 294 (2006)
STATE of Louisiana
v.
Jamaal R. JOHNSON.
No. 2006 KA 1235.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*296 Doug Moreau, District Attorney, Dylan Alge, Assistant District Attorney, Baton Rouge, Counsel for Appellee State of Louisiana.
Katherine M. Franks, Slidell, Counsel for Defendant Appellant Jamaal R. Johnson.
Jamaal Johnson, Harrisonburg, Defendant/Appellant In Proper Person.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
GUIDRY, J.
The defendant, Jamaal R. Johnson[1], was charged by bill of information with six counts of armed robbery in violation of La. R.S. 14:64 and two counts of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. He pled not guilty to all charges. Prior to the commencement of trial, the State severed counts 4-6 and 8 and elected to try the defendant only on counts 1-3 and 7 (three counts of armed robbery and one count of possession of a firearm by a convicted felon). Following a trial by jury, the defendant was convicted as charged. The defendant filed counseled and pro se motions for a new trial and post verdict judgment of acquittal.[2] The trial court denied the pro se motion for a new trial and both counseled motions. Thereafter, the State filed a multiple offender bill of information seeking to have the defendant adjudicated a third felony habitual offender pursuant to La. R.S. 15:529.1. *297 Following a hearing on the multiple offender bill, the trial court adjudged the defendant a third felony habitual offender on count one and sentenced him as follows: life imprisonment at hard labor on count one, sixty-five years at hard labor on counts two and three, and 15 years at hard labor on count seven.[3] The trial court ordered that each of the sentences be served concurrently without benefit of probation, parole, or suspension of sentence. The defendant now appeals urging the following assignments of error by counseled and pro se briefs:
Counseled:
1. The trial judge erred in failing to sustain the defense objection to the testimony of Kent Landacre when he purposefully and intentionally gave unresponsive answers to questions by both the state and the defense in order to introduce inadmissible "other crimes" evidence into the proceeding. The trial judge compounded the error when he permitted the deputy to expound on the answers, allowed the prosecutor redirect on the other crimes and later denied Jamaal Johnson's post trial motion challenging the ruling.
2. Counsel was ineffective in failing to point out Detective Landacre's pattern of unresponsive answers in order to bring inadmissible "other crimes" evidence before the jury and in failing to ask for a mistrial. Alternatively, counsel was ineffective should this court determine that it was defense counsel who elicited the other crimes evidence to the prejudice of his client.
Patent Error
1. The record does not reflect that Judge Marabella ruled on Jamaal Johnson's timely filed pro se motion for post verdict judgment of acquittal prior to sentencing.
2. The trial judge's reasons for judgment do not reflect the bases for the habitual offender adjudication.
Pro se:
1. Ineffective assistance of counselviolation of constitutional right to compel attendance of witnesses.
2. Ineffective assistance of counselviolation of constitutional right to testify on his own behalf.
3. Ineffective assistance of counselviolation of constitutional right to due process of law based on counsel's failure to request a mistrial.
Finding no merit in the assigned errors, we affirm the defendant's convictions, habitual offender adjudication, and sentences.

FACTS
On October 12, 2004, at approximately 1:00 p.m., a black male entered the U.S. Agencies Casualty Insurance (U.S. Agencies) location at Sullivan and Greenwell *298 Springs Roads in Baton Rouge and requested an insurance quote. The man told Ryan Rice, an employee of U.S. Agencies, that he needed the quote for his cousin who lived in Missouri. When Rice advised him that U.S. Agencies did not offer insurance in Missouri, the man left.
Later that same day, at approximately 5:00 p.m., Rice was assisting Roxie Ganaway, a customer, when a different young black male, who Rice subsequently identified as the defendant, entered U.S. Agencies. Rice greeted the individual and told him he would be with him shortly. The man began impatiently pacing back and forth. The man then pulled out a gun, pointed it at Ganaway, and threatened to shoot her if she screamed. He then instructed Ganaway to get under the desk and demanded that Rice open the safe. Ganaway complied. Rice informed the gunman that the safe was operated by a time-delayed lock and could not be opened for approximately fifteen minutes. The gunman then moved Ganaway and Rice to a nearby bathroom to allow time to pass so that the safe could be opened. The gunman threatened to kill Ganaway, Rice, and himself if the police came. He then rummaged through Rice's desk drawer, taking his keys, his cellular telephone, and approximately $250.00 cash found in a cash box. He also took cash from a cash box in another employee's desk. He took Ganaway's keys, cellular telephone, and cash that she had in her possession.
Meanwhile, Charles Wilson, another customer, entered U.S. Agencies. The gunman emerged from the restroom, where he had been holding Ganaway and Rice at gunpoint, and told Wilson "be with you in a second." Wilson, who had come in to make an insurance payment, waited patiently. The gunman approached Wilson and forced him into the restroom with the others. The gunman took Wilson's cellular telephone and the money he had in his hand. Approximately five minutes later, the gunman instructed Rice to "smash" the video surveillance equipment he found stored in an adjoining storeroom. Rice complied by picking up the digital recording equipment and throwing it onto the floor until it appeared broken. Rice eventually opened the safe and filled the blue nylon bag given to him by the defendant with all of its contents. The gunman fled, taking Rice's fiancée's Oldsmobile Alero that Rice had driven to work that day.
The beginning of the encounter was captured on videotape. The defendant was ultimately developed as a suspect. After being shown the video footage from U.S. Agencies, the defendant told the investigating officers, "he has clothes like me, but I can't tell if  I mean, I can't say if it is me. It looks like me, he has clothes like me, but I can't say if it is me." The defendant admitted that he had been using drugs and stated he could not recall what he had been doing at the time of the robbery.
At trial, the defense presented a theory of mistaken identity. Carol Johnson, the defendant's mother, testified that her son visited the U.S. Agencies office early on the day in question. She stated that the defendant told her that he was going there to get a quote for a family member. She further testified that she was originally from Missouri and still had numerous relatives living there. Ms. Johnson viewed the footage captured in the U.S. Agencies surveillance camera. She testified that the young man with the white muscle shirt who entered U.S. Agencies early in the day was her son, the defendant. She denied that the individual seen robbing the victims inside the establishment was the defendant. Ms. Johnson testified that she never observed the defendant in clothing *299 similar to that worn by the gunman in the video.

COUNSELED ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
In these related assignments of error, the defendant argues the trial court erred in failing to sustain a defense objection when Detective Kent Landacre testified regarding inadmissible other crimes evidence. The defendant further notes that several times during his testimony, Detective Landacre was "purposefully and intentionally unresponsive" to the questions posed to him. The defendant claims this was part of Detective Landacre's calculated plan to introduce evidence of the defendant's alleged implication in other robberies before the jury. The defendant argues that the jury's awareness of the defendant's implication in other armed robberies detrimentally impacted his defense of misidentification. The defendant claims his trial counsel was ineffective in failing to point out Detective Landacre's pattern of unresponsiveness and in failing to move for a mistrial.
The defendant first cites a portion of Detective Landacre's direct examination. He notes that, when asked the innocuous question of how he set up the meeting with Rice to view that photographic lineup, Detective Landacre responded as follows:
I believe I met him at his residence. And at the time I had five or six [lineups] because our procedure is is (sic) when we have a suspect for armed robbery we are investigating additional robberies so we show it to unsolved robberies where we have somebody who says they can identify them. So at the time when I showed a lineup I probably had six, maybe seven photo lineups generated to show additional victims from other robberies. But he [Ryan Rice] was actually the third person I showed that night . . . or the fourth person I showed that night.
The defendant also complains of Detective Landacre's response, on cross-examination, to an inquiry as to whom, besides Rice, was shown a photo lineup containing the defendant's picture. The defendant claims that Detective Landacre's response, wherein he indicated that he showed the lineup to "three victims from a Deangelo's robbery[,]" again "implicated [the defendant] in inadmissible other crimes."
Initially, we note neither of the aforementioned responses constitutes evidence of the defendant's alleged involvement in any other armed robberies. At best, the testimony reflects that the defendant's photograph was included in a lineup that was presented to victims of other robberies. The officer did not testify, nor did his responses imply, that any of the victims of the other robberies positively identified the defendant as the gunman. Thus, the responses in question were not unambiguous references to another crime committed or alleged to have been committed by the defendant. Furthermore, the record reflects that the defendant did not lodge a contemporaneous objection to either of the responses in question. Under La.C.Cr.P. art. 841 and La. C.E. art. 103(A)(1), a contemporaneous objection is required to preserve an error for appellate review. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. State v. Hilton, 99-1239, p. 12 (La.App. 1st Cir.3/31/00), 764 So.2d 1027, 1035, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 113. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of the occurrence. State v. Walker, 94-0587, p. 4 (La.App. 1st Cir.4/7/95), 654 So.2d 451, 453, writs denied, 95-1124, 95-1125 (La.9/22/95), 660 So.2d 470.
*300 Next, the defendant points to a portion of Detective Landacre's cross-examination wherein the defense counsel inquired about how the defendant was developed as a suspect. Detective Landacre replied, "[w]hen I came to work on the 25th of October my Lieutenant, Lieutenant Blackwell had informed me that the City Police had arrested an individual, Jamaal Johnson, for the armed robbery of Quizno's. And it's our standard procedure. . . ." Counsel for the defendant and the defendant both contemporaneously objected to this response. The prosecutor argued that the witness was simply answering the question posed by defense counsel and requested that he be allowed to finish the response. In overruling the defense objections, the trial court noted that the evidence was brought out in response to defense questioning, as opposed to having been elicited by the State. The court stated, "[y]ou asked the question, Mr. Leblanc [defense counsel]. He is just answering the question." Thereafter, Detective Landacre again explained that the defendant had been arrested for a robbery at the Quizno's Subs location at Coursey Boulevard and Sherwood Forest Boulevard. He further explained that when an individual is identified and arrested for a robbery, his photograph is routinely included in photographic lineups presented victims in other robberies.
Louisiana Code of Criminal Procedure article 770(2) provides for a mandatory mistrial when a remark, within the hearing of the jury, is made by the judge, the district attorney, or a court official, and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. Remarks by witnesses fall under the discretionary mistrial provisions of La.C.Cr.P. art. 771, which, in pertinent part, provides as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
A mistrial under the provisions of Article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Tran, 98-2812, p. 3 (La.App. 1st Cir.11/5/99), 743 So.2d 1275, 1280, writ denied, 99-3380 (La.5/26/00), 762 So.2d 1101. A mistrial is warranted when certain remarks are considered so prejudicial and potentially damaging to the defendant's rights that even a jury admonition could not provide a cure. State v. Edwards, 97-1797, p. 19 (La.7/2/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). Mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the accused. State v. Anderson, XXXX-XXXX p. 19 (La.App. 1st Cir.3/28/01), 784 So.2d 666, 682, writ denied, XXXX-XXXX (La.4/19/02), 813 So.2d 421. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518, p. 12 (La.1/17/01), 776 So.2d 443, 454.
*301 In the instant case, the defendant contends the trial court erred in overruling his objection to the reference to the robbery at Quizno's. He argues that the problem was further compounded when the prosecutor was allowed to repeatedly refer to the robbery at Quizno's on redirect examination. Citing La.C.Cr.P. art. 770, the defendant asserts a mistrial was mandatory under the facts and circumstances of this case.
Ordinarily a police officer is not classified as a court official under State v. Watson, 449 So.2d 1321, 1328 (La. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). The Louisiana Supreme Court has generally recognized that a police officer's unsolicited, unresponsive reference to another crime by the defendant is not the comment of a court official under Article 770. Absent a showing of a pattern of unresponsive answers or improper intent by the police officer or prosecutor, such comments would not fall within the purview of Article 770. State v. Harris, 383 So.2d 1, 9 (La. 1980); State v. Hammontree, 363 So.2d 1364, 1370-71 (La. 1978); See State v. Martin, 376 So.2d 300, 308 (La. 1979).
Herein, while the defendant recognizes that a police officer is not typically considered a court official under Article 770, he asserts that because Detective Landacre's testimony reflects a pattern of unresponsiveness and improper intent, the officer must be held to the same standard as a court official. Our review of the record does not reflect a pattern of unresponsive answers by the officer or any other showing of improper intent by the witness. The testimony in question was elicited by the defense, and, thus, there was no improper intent on the part of the prosecutor. The State cannot be charged with testimony elicited by defense counsel. Thus, the officer's testimony concerning the defendant's implication in the robbery at Quizno's, while constituting an improper reference to another crime, does not fall within the ambit of Article 770's mandatory mistrial provisions. The permissive mistrial provision contained in Article 771 is applicable to this case.
In State v. Tribbet, 415 So.2d 182, 184 (La. 1982), the police officer, while testifying on cross-examination by defense counsel, alluded to other crimes or arrests of the defendant. Citing State v. Kimble, 375 So.2d 924, 928 (La. 1979), the supreme court reiterated its position that the state cannot be charged with testimony elicited by defense counsel implying that the defendant had previously committed the other crimes, and the defendant cannot claim reversible error on the basis of that which he elicited. State v. Tribbet, 415 So.2d at 184-185.
Applying the supreme court's ruling in Tribbet to the instant case, we find no error in the trial court's overruling the defense objection. Like the officer in Tribbet, Detective Landacre was being cross-examined by defense counsel when he referred to the defendant's arrest in connection with the robbery at Quizno's. Contrary to the defendant's assertions in his brief, the answer provided was clearly responsive to the question asked. The response consisted of an explanation as to the officer's development of the defendant as a suspect in the robbery at U.S. Agencies. The trial court did not err in refusing to charge the State with the testimony clearly elicited by defense counsel. Thus, we find no error or abuse of discretion in the trial court's overruling the defendant's objection.
These assignments of error lack merit.
Ineffective assistance of counsel
It is well settled that a claim of ineffective assistance of counsel is more *302 properly raised by an application for postconviction relief in the district court where a full evidentiary hearing may be conducted. However, if the record discloses the evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Williams, 632 So.2d 351, 361 (La.App. 1st Cir. 1993), writ denied, 94-1009 (La. 9/2/94), 643 So.2d 139.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Felder, 2000-2887, pp. 10-11 (La.App. 1st Cir. 9/28/01), 809 So.2d 360, 369-370, writ denied, XXXX-XXXX (La. 10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La.App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).
In the instant case, the defendant first argues his trial counsel was ineffective in failing to point out the "pattern of unresponsive responses" by Detective Landacre. As discussed in the previous assignment of error, the first two instances cited by the defendant were not unambiguous references to any crime or bad act by the defendant. The responses merely indicated that the defendant's photograph was also included in lineups presented to other robbery victims. Thus, the only instance in the alleged "pattern" of unresponsiveness or improper intent was the reference to the robbery at Quizno's. The defendant's trial counsel objected to this particular testimony.
Insofar as the defendant argues his trial counsel was ineffective in asking the particular question that led to the witness's response, we note that a defense attorney's examination of witnesses falls within the ambit of trial strategy for purposes of evaluating an ineffectiveness claim. State v. Eames, 97-0767, p. 8 (La.App. 1st Cir. 5/15/98), 714 So.2d 210, 216, writ denied, 98-1640 (La. 11/6/98), 726 So.2d 922. See State v. Soler, 93-1042 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, 1079, writs denied, 94-0475 (La. 4/4/94), 637 So.2d 450, & 94-1361 (La. 11/4/94), 644 So.2d 1055. It is well settled that allegations of ineffectiveness of counsel relating to decisions involving investigation, preparation, and strategy cannot possibly be reviewed on appeal. See State v. Martin, 607 So.2d 775, 788 (La.App. 1st Cir. 1992). Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated.[4] Accordingly, this allegation is not subject to appellate *303 review. See State v. Albert, 96-1991, p. 11 (La.App. 1st Cir. 6/20/97), 697 So.2d 1355, 1363-1364.

COUNSELED ASSIGNMENT OF ERROR NUMBER 3
In this assignment of error, the defendant correctly asserts that the record does not reflect that the trial court ruled on his timely filed pro se motion for post verdict judgment of acquittal prior to sentencing. In its appellee brief, the State concedes there was no ruling on the motion. The State agrees that the trial court's failure to rule on the pro se motion warrants remand.
The record reflects, as the defendant correctly asserts, the defendant filed both a counseled and a pro se motion for post verdict judgment of acquittal. On February 1, 2006, the trial court denied the defendant's counseled and pro se motions for a new trial and his counseled motion for post verdict judgment of acquittal. The record does not contain a ruling on the defendant's pro se motion for post verdict judgment of acquittal. Louisiana Code of Criminal Procedure artital 821(A) provides that a motion for post verdict judgment of acquittal must be filed and disposed of before sentence. Normally, the failure of the trial court to rule on this motion would be considered an error patent on the face of the record and would require that the sentences be vacated. See State v. Handley, 94-1313, p. 3 (La. App. 1st Cir. 10/6/95), 662 So.2d 177, 178; State v. Magee, 496 So.2d 562, 563 (La. App. 1st Cir. 1986). However, we do not find such action necessary under the circumstances of the instant case. Our review of the record reflects that both post verdict judgment of acquittal motions challenged the sufficiency of the state's evidence of the defendant's identity as the gunman. There was no ground raised or argument presented in one motion that was not present in the other. Thus, any error in the trial court's failure to rule on the pro se motion was harmless. See La. C.Cr.P. art. 921. In denying the counseled motion, the trial court stated, "the court sat through a trial. The court heard the testimony. The court heard the testimony of the defendant's mother who testified in the trial. The court instructed the jury. The jury came back with a verdict of guilty. The court believes that that was certainly a fair verdict for them to come back with. The court is certainly not going to disturb that jury verdict." Thus, in denying the counseled motion, the court ruled on each of the grounds urged in the pro se motion.
This assignment of error lacks merit.

PATENT ERROR NUMBER 1
In this assignment of error, the defendant contends the trial judge's reasons for judgment do not reflect the basis for the habitual offender adjudication. Specifically, the defendant claims that the written reasons for judgment issued by the trial judge failed to state the offenses that formed the basis of the habitual offender adjudication.
The habitual offender bill of information contained in the record lists four predicate convictions as follows: 1) an August 18, 1995 simple burglary conviction (19th Judicial District Court docket number XX-XX-XXX); 2) an August 8, 1995 simple burglary conviction (19th Judicial District Court docket number XX-XX-XXXX)[5]; 3) an August 18, 1995 simple burglary *304 conviction (19th Judicial District Court docket number XX-XX-XXXX); and 4) a March 5, 1996 armed robbery conviction (19th Judicial District Court docket number XX-XX-XXXX). The defendant makes much of the fact that the trial judge stated that he was considering three convictions that were entered on the same date but the bill of information lists only two convictions with the same date. While the defendant is correct in his notation of the typographical error contained in the habitual offender bill of information, the defendant is incorrect in his assertion that the "transcript is confusing." Our review of the transcript of the habitual offender hearing reveals that any confusion as to the basis for the adjudication was clarified on the record. In finding the defendant to be a third felony habitual offender as to the conviction of armed robbery of Ganaway, the trial court specifically noted that the defendant pled guilty to "several counts" on the same date. Thereafter, the matter was further clarified by the prosecutor who advised the court that there were three convictions entered on the same date. The court then responded, "all right." Thus, it is clear from the record, viewed in its entirety, that the habitual offender adjudication was based on the fact that the defendant had a 1996 armed robbery conviction (the existence of which he stipulated), and the three 1995 simple burglary convictions entered on the same date. The three simple burglary convictions were treated as one conviction for purposes of the habitual offender statute. Because the trial court made clear on the record the basis of the third felony habitual offender adjudication, we find no error in the fact that the court did not specify each of the underlying predicate convictions in its written reasons for judgment.
This assignment of error lacks merit.

PRO SE ASSIGNMENTS OF ERROR NUMBERS 1, 2, AND 3
The defendant also submitted a pro se brief wherein he argues he received ineffective assistance of counsel at trial. In three assignments of error, the defendant claims that failure of his trial counsel to properly represent him affected the outcome of his case. He claims his counsel's performance fell below the standard of care when he: 1) failed to call the defendant's alibi witnesses to testify; 2) refused to allow the defendant to testify on his own behalf; and 3) failed to move for a mistrial after being notified that several state witnesses were observed "putting stories together" in violation of the court's sequestration order. We find these assignments of error and their supporting allegations of ineffective assistance of counsel raised in the defendant's pro se brief cannot be sufficiently investigated from an inspection of the record alone. The claims are best considered in their entirety by the trial court on post-conviction relief at an evidentiary hearing. The issue of the defendant's failure to testify and the alleged violation of the court's sequestration order involve circumstances outside of the instant record. Thus, there is no way for this court to review these claims. The decision of whether or not to call a certain witness at trial and the decision not to move for a mistrial, could involve matters of trial preparation and/or strategy. As previously noted, decisions relating to investigation, preparation, and strategy require an evidentiary hearing and cannot possibly be reviewed on appeal. These pro se assignments of error are not subject to appellate review.
For all the foregoing reasons, the defendant's convictions, habitual offender adjudication and sentences are affirmed.
*305 CONVICTIONS, HABITUAL OFFENDER ADJUDICATION AND SENTENCES AFFIRMED.
NOTES
[1] We observe that in the defendant's pro se brief, he spells his first name "Jamal," whereas throughout the record the defendant's first name is spelled "Jamaal." For the purposes of this opinion, we will spell the defendant's first name as it is spelled in the record for consistency.
[2] The record reflects that the defendant filed a pro se motion for post verdict judgment of acquittal and a counseled motion entitled "Motion for a Judgment N.O.V. or in the alternative, for a New Trial." The transcript further reflects that the defendant filed a handwritten pro se motion for a new trial. A copy of the handwritten motion is not contained in the record. The record has been supplemented to include a copy of the counseled motion.
[3] Louisiana Revised Statutes article 14:95.1(B) provides that whoever is convicted of the offense of possession of a firearm by a convicted felon "shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars." On count seven, the trial court sentenced the defendant to fifteen years at hard labor but failed to impose the mandatory fine. Because the trial court's failure to impose the fine was not raised by the State in either the trial court or on appeal, we are not required to take any action. See State v. Price, 2005-2514, p. 22 (La.App. 1st Cir. 12/28/06), ___ So.2d ___, 2006 WL 3805138 (en banc). As such, we decline to correct the illegally lenient sentence.
[4] The defendant would have to satisfy the requirements of La.C.Cr.P. art. 924 et seq. in order to receive such a hearing.
[5] Although the bill of information lists the date of this conviction as August 8, 1995, the minute entry introduced in support of the conviction reflects that the conviction occurred on August 18, 1995, the same date as the other simple burglary convictions.