STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0086

STATE OF LOUISIANA

VERSUS

RICKEY J. LAFONT, JR.

Judgment Rendered: **SEP 1 5 2023**

Appealed from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket No. 599618

The Honorable Marla M. Abel, Judge Presiding

Kristine M. Russell
District Attorney
Jason L. Chatagnier
Assistant District Attorney
Thibodaux, Louisiana

Counsel for Appellee,
State of Louisiana

Barry S. Ranshi
John J. Mason
Kenner, Louisiana

Counsel for Defendant/Appellant,
Rickey J. Lafont, Jr.

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**MILLER, J.**

The defendant, Rickey J. Lafont, Jr., was charged by amended bill of information with indecent behavior with a juvenile (count I), a violation of La. R.S. 14:81(A)(1)(H)(2); and sexual battery (count II), a violation of La. R.S. 14:43.1(A)(2) & (C)(2).[1] He pled not guilty on both counts. Following a jury trial, he was found guilty on both counts by unanimous verdicts. On count I, the defendant was sentenced to twenty-five years at hard labor, two years without benefit of probation, parole, or suspension of sentence. On count II, he was sentenced to a concurrent term of forty years at hard labor, twenty-five years without benefit of parole, probation, or suspension of sentence. The defendant now appeals designating four assignments of error. For the following reasons, we affirm the convictions and sentences.

## FACTS

In July of 2020, S.M.,[2] the nine-year-old victim, confided in her mother, A.M., that the defendant touched her between her legs. The defendant was A.M.'s live-in boyfriend at that time. S.M. subsequently gave a statement to the Child Advocacy Center regarding those allegations. In that statement, S.M. recounted that the defendant began touching her when she was seven or eight years old. According to S.M., the first incident occurred when S.M. and the defendant were lying on the couch, covered by a blanket and watching anime.[3] S.M. stated that the defendant

---

[1]Count II of the bill of information (erroneously identified as "Count I") set forth the essential facts corresponding with La. R.S. 14:43.1(C)(2), but cited La. R.S. 14:43.1(C)(3). This error, however, is harmless because the defendant neither alleges nor proves he was misled to his prejudice. See La. C.Cr.P. arts. 464 & 921.

[2]We reference the victim and her mother herein only by their initials. See La. R.S. 46:1844(W).

[3]"Anime" is defined by Merriam-Webster Dictionary as "a style of animation originating in Japan that is characterized by stark colorful graphics depicting vibrant characters in action-filled plots often with fantastic or futuristic themes. Merriam-Webster Online Dictionary, https://merriam-webster.com/dictionary/anime (last visited August 22, 2023).

began to rub her private parts,[4] and continued to do so after she told him to stop. She further stated that the rubbing continued to occur, both over her clothes and under her shorts and underwear. S.M. recalled that these incidents usually took place when everyone else in the house was sleeping, and often while the defendant watched anime or movies. The incidents allegedly occurred at the defendant's residence in Galliano. S.M., who was age eleven at the time of trial, testified at trial. Her trial testimony was consistent with her statement given to the Child Advocacy Center.

The defendant testified at trial. He denied having sexual tendencies toward children, denied being sexually aroused by children, denied touching S.M.'s vagina, and denied rubbing her vagina under her clothes.

## MOTION IN LIMINE

In his first assignment of error, the defendant contends the trial court erred in denying his motion in limine seeking to exclude evidence of a 2019 conviction for indecent behavior with a juvenile and in failing to enforce its limiting instruction to the jury. He asks this court to analogize La. C.E. art. 412.2 to La. C.E. art. 404(B)(1) and reverse the conviction under State v. Taylor, 2016-1124, 2016-1183 (La. 12/1/16), 217 So. 3d 283, arguing that the minds of the jury were "unduly prejudiced" because the State presented graphic testimony concerning his 2019 conviction and turned the trial into a "mini-trial" of the prior offense. The defendant argues that the State could have proven the prior conviction without witness testimony, and the State presented more evidence than was necessary for the limited purpose allowed by the trial court.

Prior to trial, the State filed a notice of intent to use evidence of other crimes, in particular, a June 12, 2019 conviction of the defendant for indecent behavior with another juvenile, M.N. The State contended it wished to introduce evidence of the prior conviction in the instant case, pursuant to La. C.E. art. 412.2, as evidence of the

---

[4]In her statement given to the Child Advocacy Center, S.M. referred to her vagina as her "coonie" and pointed to her private parts, which the examiner understood to mean her genitalia.

3

defendant's character for sexually assaultive behavior and/or as having a lustful disposition towards children.

The defendant filed a motion in limine arguing the 2019 conviction[5] had minimal probative value and would only serve to convince the jury he was a dangerous person where the prior conviction involved a fourteen-year-old girl, rather than a nine-year-old girl, and alleged a different type of assault. The State argued the instant offense and the prior offense both involved indecent behavior with a minor under the age of seventeen years old, and the earlier conviction demonstrated the defendant's lustful disposition towards children because it showed he had committed more than one lewd and lascivious act with minors.

The trial court found La. C.E. art. 412.2 applied because the 2019 conviction for sexually assaultive behavior involved a minor child under the age of seventeen years old at the time of the offense. The court noted it was unable to locate any jurisprudence holding a different standard applied based on the age difference between the victim in the earlier case and the victim in the instant case. The court further determined that the probative value of the evidence of the 2019 conviction was high and was not outweighed by the danger of unfair prejudice. Additionally, the court noted the State's notice complied with Article 412.2(B) by specifically articulating the previous acts[6] and how they were similar to the allegations in the instant case. Accordingly, the court held that evidence related to the 2019 conviction would be admissible in the instant case, but it would give a limiting instruction regarding any evidence introduced in connection with the conviction. The defendant objected to the ruling of the court.

---

[5]The motion also sought to prevent the presentation of evidence concerning an unrelated incident in which the defendant had allegedly choked his son. The State, however, did not offer evidence of that incident at trial.

[6]The notice set forth details of the 2019 offense consistent with the testimony of M.N., the victim in that case.

4

Louisiana Code of Evidence article 412.2, entitled, "Evidence of similar crimes, wrongs, or acts in sex offense cases," provides in pertinent part:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

. . .

Louisiana Code of Evidence article 412.2 was enacted to loosen restrictions on "other crimes" evidence, and to allow evidence of "lustful disposition" in cases involving sexual offenses. State v. Wright, 2011-0141 (La. 12/6/11), 79 So. 3d 309, 317. Following enactment of the law, the legislature amended the language of the article from allowing admission of "evidence of the accused's commission of another sexual offense" to allowing "evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children." See La. Acts 2004, No. 465, § 1. This revised language significantly broadened the scope of evidence admissible under La. C.E. art. 412.2. State v. Layton, 2014-1910 (La. 3/17/15), 168 So. 3d 358, 360. However, the balancing test set forth in La. C.E. art. 403, which insures the fundamental fairness of proceedings, specifically applies to La. C.E. art. 412.2. Layton, 168 So. 3d at 362.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Thus, in its vast discretion, the trial court may exclude relevant

5

evidence after finding that its prejudicial effect substantially outweighs its probative value. Ultimately, questions of relevancy and admissibility of evidence are discretionary calls within the trial court's "great gatekeeping discretion." Wright, 79 So. 3d at 317. Such determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Tate, 2020-0523 (La. App. 1st Cir. 4/16/21), 2021 WL 1478325 * 6 (unpublished), writ denied, 2021-00690 (La. 9/27/21), 324 So. 3d 92.

At trial, M.N., the victim from the 2019 case, testified that her date of birth is January 24, 2003. M.N. stated that on July 21, 2017, she was at the defendant's house, along with several members of her family. According to M.N., after everyone, except for M.N., the defendant, and the defendant's three young children, left to go to the grocery store, the defendant insisted that she lay on her stomach and "hovered over" her with his knee between her legs and began massaging her back, shoulders, and thighs. M.N. testified that the defendant reached under her shirt to massage her back and shoulders and massaged her thighs over her pants. She further testified that later, as she stood in the kitchen cooking supper, the defendant tickled M.N. against her wishes, pulled her underwear up, and then reached into her pants and pulled her underwear out from between the cheeks of her buttocks. M.N. also testified about how she felt during and after the assault and how it affected her relationship with her family.

Following M.N.'s testimony, the court issued the following instruction to the jury:

[E]vidence that the defendant was involved in a commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show a lustful disposition towards children. Remember, the accused is on trial only for the offense charged. You may not find him guilty of [t]his offense merely because he may have committed another offense.

To the extent that the defendant relies on Taylor in support of his argument that M.N.'s testimony should be excluded, we note that in Taylor, the Louisiana Supreme Court re-examined the requirements and procedures for introduction of "other crimes, wrongs, or acts" evidence under La. C.E. art. 404(B). Taylor, 217 So. 3d at 291-292. The court held that, when seeking to introduce evidence pursuant to La. C.E. art. 404(B), the State need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. Taylor, 217 So. 3d at 291. Further, the court maintained the longstanding requirement of a pre-trial hearing to determine the admissibility of other crimes evidence, but cautioned the hearing was not a "mini-trial" of the prior offenses. Taylor, 217 So. 3d at 292. Lastly, the court noted, even when other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence must have substantial relevance independent from showing the defendant's general criminal character and thus is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. Taylor, 217 So. 3d at 292.

On review, we find the trial court properly held that evidence related to the 2019 conviction was admissible at the instant trial under La. C.E. art. 412.2. The defendant was on trial for a charge involving sexually assaultive behavior, or with acts that constitute a sex offense, involving a victim who was under the age of seventeen at the time of the offense, and the evidence at issue concerned his commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicated a lustful disposition toward children. See La. C.E. art. 412.2(A). Further, as noted by the trial court, the probative value of the evidence related to the 2019 conviction was not outweighed (much less substantially outweighed) by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. See La. C.E. art. 403; Wright, 79 So.

7

3d at 316-319; Layton, 168 So. 3d at 360-362; State v. Dawson, 2019-1612 (La. App. 1st Cir. 11/17/20), 316 So. 3d 77, 88-89.

As previously mentioned, the defendant invites us to analogize La. C.E. art. 412.2 to La. C.E. art. 404(B)(1) and incorporate the requirements and procedures for introduction of "other crimes, wrongs, or acts" evidence under La. C.E. art. 404(B) into La. C.E. art. 412.2. In particular, the defendant wants the court to restrict the State's evidence and thus prevent the "mini-trial" discussed in Taylor. In Taylor, the Supreme Court limited its discussion to only La. C.E. art. 404(B) other crimes evidence. There is no mention in Taylor of La. C.E. art. 412.2 or La. C.E. art. 412.4, and to expand the narrow scope of the case to Article 412.2 would be inappropriate. See State v. Tate, 2021 WL 1478325 at *5. Further, while the court in Taylor cautioned against turning "this hearing" into a mini trial, it was referring to the "pre-trial hearing to determine the admissibility of other crimes evidence," not the trial on the merits. Taylor, 217 So. 3d at 292.

Additionally, we find that the State did not violate La. C.E. art. 412.2 or any other law in the manner in which it presented M.N.'s testimony at trial. The district attorney has constitutional authority over criminal prosecutions. See La. Const. art. V, § 26(B); La. C.Cr.P. art. 61. The district attorney has entire charge and control of every criminal prosecution instituted or pending in his district and determines whom, when, and *how* he shall prosecute. La. C.Cr.P. art. 61; State v. Papizan, 2017-0028 (La. App. 1st Cir. 11/2/17), 256 So. 3d 1091, 1095, writ denied, 2017-2028 (La. 10/29/18), 255 So. 3d 572. The district attorney's broad discretion in prosecuting matters encompasses his selection and presentation of evidence as permitted by the Code of Evidence. Cf. State v. Eason, 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So. 3d 61, 71. Here, the defendant specifically complains that the district attorney put on evidence about "how [M.N.] felt after the act(s) were committed, how it affected her relationships with her family, and how she felt during the subsequent

8

trial," which evidence goes beyond the limited purpose approved by the court, i.e., proving lustful disposition. Yet, at trial, no objection was made by the defendant at trial to the brief testimony given by M.N. Further, we have carefully reviewed the manner in which the State questioned M.N. and find the questions to be focused on the prior offense and not its aftermath. We further note that as Article 412.2 allows for evidence of wrongs or acts, even when outside the scope of a previous conviction, the article does not require a presentation restricted to the sterile introduction of a minute entry or to otherwise limit witness testimony.

We find the State did not violate the limiting instruction imposed by the trial court. To the contrary, in closing argument, the State emphasized the limited admissibility of M.N.'s testimony, to-wit:

> You heard testimony from [M.N.]. And ... you've been instructed that there's a limited purpose, [for which] that testimony, that evidence has been presented to you. And I agree. It's not that [the defendant] committed this offense because he committed the offense of indecent behavior back in 2017. It's being submitted to you that it's evidence of his character that [the defendant] has a lustful disposition towards children.

This assignment of error lacks merit.

## INADMISSIBLE PREJUDICIAL EVIDENCE

In his second assignment of error, the defendant contends that the trial court erred in failing to exclude inadmissible prejudicial evidence, in particular, testimony concerning the defendant's proclivity for watching anime, in contravention of State v. Barnes, 28,835 (La. App. 2nd Cir. 12/11/96), 685 So. 2d 1148. The defendant contends that the State attempted to conflate cartoons shown on Cartoon Network with pornography to "create the image of a bad person in the eyes of the jury."

In Barnes, the defendant argued on appeal that reference to his gang membership elicited by the State was inadmissible character evidence that did not fall within any of the exceptions in La. C.E. art. 404(B)(1). Barnes, 685 So. 2d at 1155. The appellate court found the defendant failed to object at trial that certain

9

questioning elicited evidence of other crimes, and thus, the issue was not preserved for review. Barnes, 685 So. 2d at 1155. Thereafter, the court nonetheless found that the evidence should have been excluded, noting that while a defendant's gang membership may be probative under certain conditions, whether the defendant was in a gang was not relevant to the elements of his armed robbery charge. Even so, the court found that the error was harmless. Barnes, 685 So. 2d at 1155.

Subsequent jurisprudence has distinguished Barnes when evidence of gang affiliation, and presumably other Article 404(B) evidence, was relevant to an essential element of the crime. See State v. Gray, 2014-1213 (La. App. 4th Cir. 11/25/15), 179 So. 3d 936, 942, writ denied, 2016-0006 (La. 1/13/17), 215 So. 3d 241 ("This case is distinguishable from Barnes in that the State introduced evidence of [the defendant's] gang affiliation to show motive for the murder.").

In the instant case, the defendant failed to object to testimony from S.M. that the defendant touched her vagina "almost every night" while watching anime with her.[7] He also failed to object to testimony from S.M.'s mother, A.M., that he watched provocative anime every day. A.M. also testified that during her sexual relationship with the defendant, she learned he was interested in Hentai, which she indicated was Japanese anime in which the characters engaged in sexual relations.

Amanda Aten, who was accepted by the court as an expert in the field of sex offender evaluation and treatment, testified at trial that the defendant "did not present himself with pedophiliac tendencies" during her evaluation. Defense counsel asked Aten if her opinion would change had there been testimony that the defendant and his girlfriend viewed Japanese Hentai pornography. Aten answered that she believed the defendant told her that he viewed pornography with his girlfriend at the time of the evaluation.

---

[7]S.M. identified pictures of anime programs showing women and young girls in tight or revealing clothing as programs she watched with the defendant when he touched her vagina.

Aten stated the first picture of the anime program shown to S.M. at trial was not "child appropriate," but was not pornographic. She agreed the second picture of the anime program shown to S.M. at trial was "sexualized." The State asked Aten if it would be problematic if the defendant viewed Hentai. Aten replied that while certain pornography is legal, a condition of sex offender treatment is that the person in treatment not view pornography.

The only objection raised by the defense during the State's questioning of Aten was that it was unfair to ask her questions about the content of the anime shows when she had only been provided photographs from the shows. The court sustained the objections and cautioned the State to ask her about the photograph being a representation of the actual cartoon.

It is well settled that defense counsel must state the basis for an objection when it is made, pointing out the specific error to the trial court. The grounds for objection must be sufficiently brought to the court's attention to allow it the opportunity to make the proper ruling and prevent or cure any error. See La. C.E. art. 103(A)(1) ("Error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected, and ... [w]hen the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, *stating the specific ground of objection* [.]") (emphasis added); La. C.Cr.P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... It is sufficient that a party, at the time the ruling ... is made ... makes known to the court ... his objections to the action of the court, *and the grounds therefor.*") (emphasis added). State v. Williams, 2010-1392 (La. App. 1ˢᵗ Cir. 2/11/11), 2011 WL 2178767, *5 (unpublished), writ denied, 2011-1028 (La. 3/9/12), 84 So. 3d 542.

In the instant case, the La. C.E. art. 412.2 notice of intent to use evidence of other crimes listed not only the prior conduct of the defendant demonstrating his

lustful disposition towards children, but also the circumstances of the instant offense, i.e., the inappropriate touching of S.M. allegedly occurred while the defendant watched anime with her. The defendant's motion in limine, however, did not object nor move to exclude the references to anime. Additionally, the defendant failed to object to the references to anime and Hentai at trial. Accordingly, this assignment of error was not preserved for review.

## FAILURE TO SUBJECT THE TESTIMONY OF THE VICTIM TO MEANINGFUL ADVERSARIAL TESTING

Next, the defendant contends that his trial counsel rendered ineffective assistance by questioning the State's expert witness, rather than the victim, S.M., concerning S.M.'s account of when the incidents occurred.[8]

Defense counsel questioned Shannon Gros, who conducted the interview with S.M. at the Children's Advocacy Center, concerning S.M.'s alleged statement that the incidents occurred when she was between seven and nine years old. Gros replied that S.M. stated the incidents started when she was seven or eight years old. Defense counsel then asked, "But you didn't attempt to define the dates?" Gros replied, "I interview 17-year-olds and I don't ask for specific dates." Thereafter, S.M. testified at trial. After the State completed its direct examination of S.M., defense counsel stated he had no questions for her.

Generally, a claim of ineffective assistance of counsel is relegated to post-conviction proceedings, where a full evidentiary hearing may be conducted, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192 (La. 9/6/00), 776 So. 2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149

---

[8]The defendant states in brief that the defense counsel also failed to ask any questions of the "prior victim," M.N. at trial. However, the defendant failed to argue or brief how this amounted to error. Assignments of error that are neither briefed nor argued are considered abandoned. Uniform Rules – Courts of Appeal, Rule 2-12.4(B)(4); see State v. Laue, 2020-0225 (La. App. 1st Cir. 12/30/20), 326 So. 3d 267, 282, writ denied, 2021-01329 (La. 11/17/21), 327 So. 3d 993 ("Restatement of an assignment of error in brief is nothing more than a listing of the assignment and certainly does not constitute briefing of the assignment.").

L.Ed.2d 111 (2001); State v. Allen, 94-1941 (La. App. 1st Cir. 11/9/95), 664 So. 2d 1264, 1271, writ denied, 95-2946 (La. 3/15/96), 669 So. 2d 433.

Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic, and tactical, which must be made before and during trial, rest with an accused and his attorney. State v. Folse, 623 So. 2d 59, 71 (La. App. 1st Cir. 1993). The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Moody, 2000-0886 (La. App. 1st Cir. 12/22/00), 779 So. 2d 4, 8-10, writ denied, 2001-0213 (La. 12/7/01), 803 So. 2d 40; see State v. Johnson, 2006-1235 (La. App. 1st Cir. 12/28/06), 951 So. 2d 294, 302 ("[A] defense attorney's examination of witnesses falls within the ambit of trial strategy for purposes of evaluating an ineffectiveness claim."). In the instant case, however, the defendant's claim that trial counsel failed to adequately cross-examine S.M. requires an evidentiary hearing to determine whether the alleged deficient performance concerned a matter of strategy. Thus, it cannot possibly be reviewed on appeal. See State v. Allen, 664 So. 2d at 1271, citing State v. Martin, 607 So. 2d 775, 788 (La. App. 1st Cir. 1992) (the investigation of strategy decisions requires an evidentiary hearing and, therefore, could not possibly be reviewed on appeal).

Accordingly, the defendant's claim of ineffectiveness, as it relates to the strategic choice made by counsel between alternative defenses available, is more properly raised by an application for post-conviction relief where a full evidentiary hearing may be conducted. See Allen, 664 So. 2d at 1271.

**VIOLATION OF McCOY**

Finally, the defendant contends trial counsel "admitted" the defendant's guilt in his closing argument in violation of McCoy v. Louisiana, ___ U.S. ___, 138 S.Ct. 1500, 1505, 200 L.Ed.2d 821 (2018) ("[A] defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is

13

that confessing guilt offers the defendant the best chance to avoid the death penalty.").

In McCoy, the United States Supreme Court held that trial counsel's concession of guilt, against the defendant's clearly and persistently stated wishes, violates the defendant's Sixth Amendment autonomy rights and amounts to structural error entitling the defendant to a new trial without the need to demonstrate prejudice. The Supreme Court reasoned that although some aspects of the defense, such as trial management, including strategy, objections, and evidentiary matters, are within counsel's purview, the Sixth Amendment provides a defendant with "[a]utonomy to decide that the objective of the defense is to assert innocence ... at the guilt phase of a capital trial. These are not strategic choices about how to best *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." McCoy, 138 S.Ct. at 1508 (emphasis in original); see State v. Brown, 2016-0998 (La. 1/28/22), 347 So. 3d 745, 809, cert. denied, ___ U.S. ___, 143 S.Ct. 886, 215 L.Ed.2d 404.

The defendant argues defense counsel violated McCoy during closing argument by stating, "Do you want to take [the defendant] out of the workforce and put him in jail for virtually the rest of his life over this? Are the victims so harmed that we're gonna make this the equivalent of a murder?"

The challenged statements were part of the following closing argument:

> The Judge is going to instruct you on the law and I won't go through all of it. But it's not just an either or choice. You have ... the power to do what you think is right, including find him guilty of an attempt or doing what I think is **actually the right thing in this case is to find him not guilty.** He's already on probation. He's already served two years in jail. Do you want to take him out of the workforce and put him in jail for virtually the rest of his life over this? Are the victims so harmed that we're gonna make this the equivalent of a murder? I think not. I think **the right thing to do here is to find him not guilty** and that's what I ask you to do at the end of this case. Thank you. [Emphasis added.]

14

We have thoroughly reviewed the transcript contained in the record herein. We find the challenged statements, viewed in context, were neither an admission nor a concession of guilt, and thus, did not violate McCoy. They were made between counsel's statements, "what I think is actually the right thing in this case is to find him not guilty[,]" and "I think the right thing to do here is to find him not guilty and that's what I ask you to do at the end of this case."

We find no merit to this assignment of error.

**CONVICTIONS AND SENTENCES AFFIRMED.**